WAGNER, Appellant, vs. MILWAUKEE COUNTY and others, Respondents.

| 112 | 601 |
|---|---|
| 116 | 198 |

*December 18, 1901 — January 7, 1902.*

*Constitutional law: Local act for construction of viaduct: Title of bill: Uniformity of county government: Special law affecting highway.*

Ch. 310, Laws of 1899 (entitled "An act to authorize the building of viaducts across gullies, running streams, or railroad tracks, by the counties in this state, and for the issuing of county bonds therefor"), authorizes the board of supervisors of any county to construct a viaduct, and issue bonds to pay therefor, over any gully, river, valley, or depression, for the purpose of connecting two or more highways, streets, or roads, or different parts of the same highway, street, or road, provided such viaduct shall be not less than 1,000 feet long, sixty feet wide, and eighteen feet high, and cost not less than $80,000, and the amount of bonds issued therefor shall not exceed one fifth of one per cent. of the taxable property of the county. ' Milwaukee county is the only county in the state having an assessed valuation sufficient to raise $80,000 at the rate specified. *Held,* that said act is local and special, and violates both sec. 18, art. IV, Const. (providing that "no private or local bill . . . shall embrace more than one subject, and that shall be expressed in its title"), and sec. 23, art. IV (providing that "the legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable"). [Whether it also violates sec. 31, art. IV, Const. (prohibiting the legislature from enacting any special or private law for laying out, opening, or altering highways), not determined.]

APPEAL from an order of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

For the appellant the cause was submitted on the brief of *Julius E. Roehr.*

For respondents there was a brief by *W. F. Bennett*, district attorney, and *Edward T. Fairchild*, assistant district attorney, and oral argument by *F. E. McGovern.* They contended, *inter alia*, that ch. 310, Laws of 1899, is a general law as distinguished from a private or local law. It is

prospective. It provides that any county may, at any time, take advantage of the act under certain conditions, and these conditions are properly imposed and are within the lawful exercise of the discretion of the legislature. *Johnson v. Milwaukee*, 88 Wis. 383; 15 Am. & Eng. Ency. of Law (1st ed.), 978; 23 id. 148; *Bumsted v. Govern*, 47 N. J. Law, 368; *Comm. v. Blackley* (Pa.), 52 L. R. A. 367; *State v. Spaude*, 37 Minn. 322; *State v. Clayton*, 53 N. J. Law, 277; *Johnson v. Martin*, 75 Tex. 33. Classification by assessed valuation is within the discretion of the legislature. *Kilgore v. Magee*, 85 Pa. St. 401; *Comm. v. Blackley* (Pa.), 52 L. R. A. 367; *Johnson v. Milwaukee*, 88 Wis. 383; *Land, L. & L. Co. v. Brown*, 73 Wis. 294, 302; *Van Riper v. Parsons*, 40 N. J. Law, 123.

CASSODAY, C. J. This is an appeal from an order sustaining a demurrer to a complaint in an action brought by a taxpayer in his own behalf, and on behalf of all other owners of taxable property in the county of *Milwaukee* similarly interested in the matters and things hereinafter set forth, to restrain the county and its board of supervisors and officers from further proceeding in the matter of constructing the viaduct therein mentioned, and from issuing, selling, or disposing of the bonds therein mentioned, or any part thereof, and from assessing, levying, or providing for the collection of any taxes upon the taxable property in the county for the purpose of paying such bonds or any part thereof.

The complaint alleges, in effect, that the proposed viaduct was to be constructed over what is known as the "Menominee Valley," from Grand avenue west, at a point described, pursuant to the authority given by ch. 310, Laws of 1899; that at a regular meeting of the board the resolutions, set out in full, were regularly introduced November 27, 1900, reciting that such viaduct was to be at the place described, and to be eighty feet wide and 1,744 feet long, and provid-

ing that bonds to the ·amount of $275,000 should be issued,
as prescribed in said chapter, to raise money for the build-
ing of such viaduct, and directing the proper officers of the
county to assess, levy, and collect a direct annual tax upon
all the property of the county sufficient to pay the interest
on such bonds as the same should fall due, and also to levy
and assess a direct tax sufficient to pay the principal of said
bonds as the same should mature, and collect the same; that
such resolutions prescribed the blank form of such bonds,
and by whom such bonds and coupons attached were to be
signed and countersigned; that such resolutions were, at a
regular session of the board held December 11, 1900, duly
and regularly adopted and enacted by the board; that, pur-
suant to such resolutions, further proceedings were had by
the board for the purpose of constructing such proposed via-
duct, and, as provided in said chapter, the board designated
the tracts of land over and upon which the said viaduct
should be placed, the same being of the dimensions therein
prescribed; that the board had caused plans and specifica-
tions to be prepared and filed for the construction of the via-
duct, as provided in the act, and had received bids for the
work and materials and construction, and was about to let
contracts for such work and materials; that the same would
not cost less than $275,000, for which the board was about
to obligate the county by such issue of bonds; that such
bonds had been delivered to the county treasurer, and he
was about to sell and dispose of the same unless restrained;
that the amount of the bonds does not, exclusive of the in-
terest, exceed a sum equal to one fifth of one per cent. of the
value of all taxable property of the county, as determined
by the last assessment and equalization for state and county
taxes next prior to March 1, 1901, and that the county of
*Milwaukee* is the only county in the state having at present
an assessed valuation of taxable property exceeding $40,000,-
000, although a number of counties have but little less than

that amount, and are increasing in their assessed valuation each year; that, pursuant to the action of the board at its regular meeting mentioned, the officials of the county were about to assess, levy, and collect such direct annual tax, and will unless restrained; that, if allowed to proceed, the plaintiff and other taxpayers would have no adequate remedy at law; that ch. 310, Laws of 1899, was illegal and void, and such action of the board of supervisors thereunder was illegal and void.

The act in question is entitled "An act to authorize the building of viaducts across gullies, running streams, or railroad tracks, by the counties in this state, and for the issuing of county bonds therefor." The first section of the act provides, among other things, that "the county board of supervisors of any county within this state is hereby authorized and empowered to alter, erect, construct and maintain any viaduct not less than 1,000 feet in length, the cost of construction of which, together with the right of way therefor, shall be not less than the sum of $80,000, over and across any gully, river, valley or depression in land, for the purpose of connecting two or more highways, streets or roads, or different parts of the same highway, street or road; . . . but no such viaduct shall be constructed by any such county at the expense thereof which shall be less than 1,000 feet in length or less than sixty feet in width, or of an average height of less than eighteen feet, or the cost of which, including the right of way therefor, to be determined by estimate procured by such county board, shall be less than the sum of $80,000." The fourth section provides, in effect, the manner of construction, and the kind of material to be employed; the size, strength, and dimensions of the different parts of the foundation, and the material from which it must be constructed; and when constructed over a navigable river it must have a suitable draw, and when across or over a railroad track must be not less than twenty-

three feet above the rails.   The seventh section provides, in effect, that whenever the construction of a viaduct shall have been determined upon, agreeably to the conditions of the act, the county board is thereby authorized and em-powered to issue bonds of such county for the purpose of raising money, as mentioned, "provided that the amount of bonds so issued shall not, exclusive of interest, exceed a sum equal to one fifth of one per cent. of the value of all taxable property of said county, as determined by the last assessment and equalization for state and county taxes next prior to the issue thereof."

Counsel contends that the act in question is void for the reason that it is repugnant to the provisions of the consti-tution which declare that "no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." "The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practica-ble."   Secs. 18, 23, art. IV, Const.   There can be no ques-tion but that the title of the act is general, and may apply to any county in the state, if the provisions of the act do not prevent.   So most of the sections of the act, in terms, apply to any county within this state.   But it is contended that by reason of the provisions of the act set forth in the complaint, and above mentioned, the act is local and special. As indicated, such viaduct must not be less than 1,000 feet in length, nor less than sixty feet wide, nor less than an average height of eighteen feet, nor cost less than $80,000, and the amount of bonds issued by such county for the purpose of raising money to pay for such structure and right of way should "not, exclusive of interest, exceed a sum equal to one fifth of one per cent. of the value of all taxable property of said county, as determined by the last assessment and equalization for state and county taxes next prior to the issue thereof."   The complaint alleges, and the

demurrer concedes, that to raise $80,000 on that basis
would require an assessed valuation of taxable property of
$40,000,000, and that *Milwaukee County* is the only county
in the state having an assessed valuation of taxable prop-
erty to the amount of $40,000,000.

This court has held that an act authorizing counties to aid
in the construction of bridges, which provided that it should
not apply to a particular county named, was in violation of
the constitutional provision last quoted. *State ex rel. La
Valle v. Sauk Co.* 62 Wis. 376.   On the other hand, it has
been held by this court that an act of the legislature appli-
cable only to towns containing villages of a certain popula-
tion did not violate the provisions of the constitution requir-
ing " but one system of town and county government."
*Land, L. & L. Co. v. Brown,* 73 Wis. 294, 302.  In that case,
Mr. Justice TAYLOR, speaking for the court, impliedly de-
clared that in enacting such laws the legislature might
have " regard to the wealth, population, or other peculiari-
ties of such towns."   Just what the learned justice meant
by " other peculiarities " is not apparent.   It may have ref-
erence to different classes of property or people, but we do
not think it can be properly applied to the mere present
and existing peculiar topography of particular localities;
otherwise there might be almost an unlimited number of
classes, since there is almost an unlimited number of such
peculiarities.   In a more recent case, our late brother NEW-
MAN stated some general rules in respect to class legislation,
as follows:

" It is not required that all general laws shall be equally
general.   A law legislating for a class is a general law
when it is for a class requiring legislation peculiar to itself
in the matter covered by the law.   A law relating to par-
ticular persons or things *as a class* is said to be general,
while a law relating to particular persons or things *of a class*
is deemed special and private.   Whether such laws are to
be deemed general laws or special laws depends very much

upon whether the classification is appropriate.  . . .  All
classification must be based upon substantial distinctions
which make one class really different from another.  . . .
The classification adopted must be germane to the purpose
of the law. . . . The classification must not be based upon
existing circumstances only.  It must not be so constituted
as to preclude addition to the numbers included within a
class.  . . .  To whatever class a law may apply, it must
apply equally to each member thereof." *Johnson v. Mil-
waukee*, 88 Wis. 383, 390–392.

See *Boyd v. Milwaukee*, 92 Wis. 460; *Chicago & N. W.
R. Co. v. Forest Co.* 95 Wis. 80; *Burnham v. Milwaukee*,
98 Wis. 128, 135; *Adams v. Beloit*, 105 Wis. 363, 369, 371;
*Milwaukee Co. v. Isenring*, 109 Wis. 19.  In addition to the
authorities there cited by Justice NEWMAN, see Restrictions
Upon Local and Special Legislation, by Mr. Binney (pages
54, 55, 59, 78), where such rules are summarized.  The au-
thor, among other things, says:

" The underlying principle of general legislation is the
same in all cases.  A law applying to and embracing within
its operation all persons or things which are in or which
may come into like situations and circumstances is general,
no matter what the persons or things may be, either in
character or in number."

" If the membership of a class be unchangeable, then the
law applies only to the individual members, and never can
apply to others.  Such a law is clearly special." *Id.*

The principal difficulty, after all, is in the application of
such rules to the particular conditions present in a given
case, and in such classification courts differ.  In a Pennsyl-
vania case it is held that " there can be no proper classifica-
tion of cities or counties, except by population.  Geograph-
ical distinctions cannot be resorted to without entering the
domain of special legislation." *Comm. ex rel. Fertig v. Pat-
ton*, 88 Pa. St. 258, 260.  The court there said that " the
moment we resort to geographical distinctions we enter the
domain of special legislation, for the reason that such classi-
fication operates upon certain cities or counties to the per-

petual exclusion of all others." *Id.* In a later case in that state it is held:

> "The only ground upon which the classification of cities for purposes of legislation   .  . is or can be sustained is the evident necessity for the possession by some cities of corporate powers unsuited for others, the great differences in their population rendering necessary corresponding differences in the number, character, powers, and duties of the municipal officers. That classification does not authorize legislation for a class of cities upon subjects not relating to municipal affairs. A law which will not bear the test that it must apply to all members of the class to which it relates, and be directed to the existence and regulation of municipal powers, is a local law, and as such it is invalid, if it be upon one of the subjects as to which local and special legislation is forbidden by the constitution." *Ruan Street*, 132 Pa. St. 257.

So, in New Jersey, an act of the legislature concerning bridges and turnpikes, which declared that it should not apply to any county having a county road board, was held to be special and local, and hence void. *Lodi v. State*, 51 N. J. Law, 402. So an act of the legislature authorizing the formation of borough governments in seaside resorts was held to be local and special, and hence void. *State ex rel. Att'y Gen. v. Sommers Point*, 52 N. J. Law, 32.

We must hold that the act in question is local and special, within the meaning of the provision of the constitution quoted. Moreover, it attempts to give to the county of *Milwaukee* powers of local government not possessed by any other county in the state, and hence is repugnant to sec. 23, art. IV, Const.

Attention is called to another clause of the constitution, not mentioned on the argument nor referred to in the brief of counsel on either side. It is the clause which prohibits the legislature "from enacting any special or private laws," "for laying out, opening or altering highways, except in cases of state roads extending into more than one county, and military roads to aid in the construction of which lands

may be granted by Congress." Sec. 31, art. IV, Const. By the express terms of the act, the viaduct must be "for the purpose of connecting two or more highways, streets or roads, or different parts of the same highway, street or road, or for making the thoroughfare more safe, convenient or passable, whether the same shall be a county road or town highway, or located wholly within one town or municipality or not." Sec. 1, ch. 310, Laws of 1899. Thus it appears that the proposed viaduct must be not less than 1,000 feet long, nor less than sixty feet wide, nor less than eighteen feet high and must connect " two or more highways, streets or roads or different parts of the same highway, street or road." A "viaduct" is defined in different ways by the dictionaries, some giving details as to the character of the structure, but all reaching, in a general way, the same conclusion. Omitting such details, we have:

"An extensive bridge . . . for the purpose of conducting a road or a roadway over a valley . . . where an embankment would be impracticable or inconvenient; more widely, an elevated roadway . . . established." Cent. Dict.

"A bridge-like structure, especially a large one of arched masonry, to carry a roadway or the like over a valley or ravine or across another roadway." Stand. Dict.

Worcester's Dictionary is quite similar. The same is true with the Imperial Dictionary, after stating that it is "the name usually given to an extensive bridge." The same is true with one definition given by Webster, who gives as another definition simply " a bridge," and then defines " bridge " as " a structure . . . over a river or other watercourse, or over a ravine, railroad, etc., to make a continuous roadway from one bank to the other." So a " bridge " is defined as " any structure which spans a body of water, or a valley, road, or the like, and affords passage or conveyance." Cent. Dict. The complaint expressly alleges that the proposed viaduct over and across the Menominee valley was to con-

nect "Grand avenue with a highway on the top of the bluff on the west side of said valley," pursuant to the act in question. If the construction of such viaduct, as prescribed by the act, would be the "laying out, opening or altering highways," within the meaning of the constitutional provision last quoted, then the passage of the act by the legislature was thereby expressly forbidden, and hence would be void. Since it is a constitutional question and was not argued by counsel, and it is not necessary to decide, we refrain from deciding it.

*By the Court.*— The order of the superior court of Milwaukee county is reversed, and the cause is remanded with direction to overrule the demurrer and for further proceedings according to law.