Lonzetta DAVIS, in her own behalf and as natural guardian of her daughter, Sabrina Davis; Velma Y. Frier, in her own behalf and as natural guardian of her daughter, Shavonne Frier; Janet Grice, in her own behalf and as natural guardian of her son, Melvin Grice; Doris Pinkney, in her own behalf and as natural guardian of her daughter, Antionette Roberson; and Thais M. Jackson, in her own behalf and as natural guardian of her daughter, Tamika Carr; Bruce-Guadalupe Community School; Harambee Community School; Highland Community School; Juanita Virgil Academy; Urban Day School and Woodlands School, Plaintiffs-Respondents,†

v.

Herbert J. GROVER, Superintendent of Public Instruction of the State of Wisconsin, Defendant-Cross-Claimant-Defendant-Respondent,†

Felmers O. CHANEY, Richard Collins, Mary Ann Braithwaite, Lauri Wynn, Linda Oakes, George Williams, Melanie Moore, Donald A. Feilbach, Wisconsin Association of School District Administrators, Inc., Wisconsin Education Association Council, National Association for the Advancement of Colored People, Milwaukee Branch, Association of Wisconsin School Administrators, Milwaukee Teachers Education Association, Wisconsin Congress of Parents & Teachers, Inc., Milwaukee Administrators &

†Petition to review granted.

Supervisors Council, Inc., and Wisconsin Federation of Teachers, Intervenors-Petitioners-Appellants,

v.

Charles P. SMITH, State Treasurer and Board of School Directors of the City of Milwaukee, Cross-Claimant-Defendant-Respondent.† .

Court of Appeals

*No. 90–1807. Oral argument October 3, 1990.—Decided November 13, 1990.*

(Also reported in 464 N.W.2d 220.)

152

For the intervenors-petitioners-appellants the cause was submitted on briefs of *Friebert, Finerty & St. John, S.C.,* by *Robert H. Friebert, Charles D. Clausen, David*

*S. Branch, Caren B. Goldberg,* and *Peter K. Rofes,* of Milwaukee, and by *Bruce Meredith,* of Madison. Oral argument by *Robert H. Friebert.*

For the plaintiffs-respondents the cause was submitted on briefs of *Landmark Legal Foundation Center for Civil Rights,* by *Clint Bolick, Allyson Tucker, Jerald L. Hill, Mark Bredemier,* of Washington, D.C., and by *Anne Sulton,* of Madison. Oral argument by *Clint Bolick.*

For the defendant-cross-claimant-defendant-respondent, Herbert J. Grover, Superintendent of Public Instruction of the State of Wisconsin, and the cross-claimant-defendant-respondent, Charles P. Smith, State Treasurer, the cause was submitted on briefs of *Donald J. Hanaway,* attorney general, with *Warren D. Weinstein,* assistant attorney general. Oral argument by *Warren D. Weinstein.*

For the cross-claimant-defendant-respondent, Board of School Directors of the City of Milwaukee, the cause was submitted on briefs of *Grant F. Langley,* City Attorney, with *Patrick B. McDonnell* and *Susan D. Bickert,* of Milwaukee.

Brief of Amicus Curiae of the Wisconsin Association of School Boards, Inc. of *Lathrop & Clark,* by *Jill Weber Dean* and *Michael J. Julka,* of Madison.

Brief of Amicus Curiae of the Governor and Legislators by *Eva M. Soeka,* of Milwaukee, and *Robert A. Destro,* of Washington, D.C.

Before Eich, C.J., Gartzke, P.J., and Myse, J.

GARTZKE, P.J. Felmers O. Chaney and others appeal from a judgment[1] declaring that sec. 119.23,

---

[1]Respondents Lonzetta Davis, et al., began this action on June 25, 1990, on behalf of economically disadvantaged students planning to attend Milwaukee private schools, seeking to compel

Stats.,[2] does not violate the Wisconsin Constitution. The statute, which provides a state subsidy for certain low-income Milwaukee children to attend private schools, was enacted as part of the 1989 state budget adjustment bill. We reverse the judgment because enactment of sec. 119.23 as part of a multi-subject bill violated art. IV, sec. 18, of the Wisconsin Constitution, which provides: "No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title."

The purpose of art. IV, sec. 18 is to assure that the legislature and people of Wisconsin are advised of the real nature and subject matter of proposed legislation, and to prevent bills benefiting private or local interests from being "smuggled" through the legislature. The Wisconsin Supreme Court has created two tests to determine whether a bill is "private or local."

One test applies to bills that are specific as to persons, places, or things. The other test applies to legislation directed to a particular class. We conclude that, because it is addressed to cities of the first class, the legislation before us is "classification" legislation. This

defendant Herbert Grover, state superintendent of public instruction, to comply with sec. 119.23. Chaney, president of the Milwaukee branch of the NAACP and a taxpayer, and others, intervened as defendants, cross-claiming against Grover, Charles Smith (state treasurer), and the Milwaukee school board, to assert constitutional challenges to the statute. They did so on June 27, 1990, after the Wisconsin Supreme Court denied them leave to commence an original action in that court on June 26, 1990. On August 10, 1990, the circuit court entered the judgment appealed from. Appellants appealed the same day and moved for relief pending appeal. On August 20, 1990, we denied relief pending appeal, on the grounds that appellants had failed to demonstrate irreparable harm, and we advanced the case.

[2]The statute is reproduced as an appendix to this opinion.

is so even though Milwaukee is presently the only first class city in Wisconsin, because the class is open to additional members. We conclude the legislation fails to satisfy at least two parts of the supreme court's test for classification legislation. It is therefore "private or local" legislation that cannot constitutionally be passed as part of a bill which embraces more than one subject.

Although we apply the classification test, we respectfully suggest that a slightly modified "specific" test could be better suited to determine whether experimental social legislation such as this school program is private or local. But as an error-correcting court, we must follow the precedents established by the Wisconsin Supreme Court. Those precedents compel a single conclusion: sec. 119.23, Stats., is classification legislation enacted contrary to art. IV, sec. 18, of the Wisconsin Constitution.[3]

## I.  BACKGROUND

Because it is part of Chapter 119, Stats., sec. 119.23 applies only to cities of the first class. Section 119.01, Stats.[4] Milwaukee is presently the only city of the first

---

[3]Since we conclude the enactment of sec. 119.23 violated art. IV, sec. 18, we do not address the remaining issues: whether the statute violates art. X, sec. 3, of the Wisconsin Constitution, which requires the legislature to "provide by law for the establishment of district schools, which shall be as nearly uniform as practicable; . . ." and whether the statute is consistent with the constitutional doctrine that when the state provides funds to a private entity to further a public purpose, that entity must be under "proper governmental control and supervision." *State ex rel. Warren v. Reuter,* 44 Wis. 2d 201, 215, 170 N.W.2d 790, 796 (1969).

[4]For purposes of administration and the exercise of corporation powers, cities in Wisconsin are divided into four classes.

class in Wisconsin. The statute allows low-income students in a first class city to enroll in private nonsectarian schools. No more than one percent of the district's membership may participate in a given year. The trial court found that, as applied to Milwaukee, the statute permits participation by approximately 1,000 students. For each participating student, state educational funding is diverted from that city's public schools to the participating private schools, pursuant to a legislatively established formula.

Section 119.23, Stats., was enacted on April 27, 1990, as sec. 228 of 1989 Senate Bill 542 (1989 Act 336), an adjustment to the biennial budget passed the previous year. Although the subject of sec. 119.23 was expressed in the title to S.B. 542, the bill embraced many other subjects. That circumstance raises the issue whether the Parental Choice law was a "private or local bill" and therefore enacted in violation of art. IV, sec. 18 of the Wisconsin Constitution. This is a question of law which we decide without deference to the trial court.

The Wisconsin Supreme Court has applied the "private or local bill" provision in art. IV, sec. 18, in three comparatively recent cases: *Soo Line R.R. v. DOT,* 101 Wis. 2d 64, 303 N.W.2d 626 (1981), *Milwaukee Brewers Baseball Club v. DH&SS,* 130 Wis. 2d 79, 387 N.W.2d 254 (1986), and *City of Brookfield v. Milwaukee Metro. Sewerage Dist.,* 144 Wis. 2d 896, 426 N.W.2d 591 (1988).

Section 62.05(1), Stats. The classification of a city depends on essentially two factors: the city's population and whether, when the city qualifies to pass from one class to another, a proclamation by its mayor declaring that fact is published. Section 62.05(2), Stats. Cities of 150,000 population and over may be cities of the first class. Cities of the second, third and fourth classes have progressively smaller population ranges. Section 62.05(1)(a)–(d).

The *Soo Line* court invalidated a statute which directed the department of transportation and Soo Line Railroad Company to establish an at-grade crossing at a specified highway and railroad intersection. The statute was enacted as part of the 1977 budget bill which, of course, embraced many subjects. The court described the constitutional limitation as intended to assure that the legislature and people of the state are advised of the real nature and subject matter of the legislation being considered to avoid fraud or surprise. 101 Wis. 2d at 72, 303 N.W.2d at 630. It quoted from *Milwaukee County v. Isenring,* 109 Wis. 9, 23, 85 N.W. 131, 136 (1901) that the framers of the constitution "intended to guard against the danger of legislation, affecting private or local interests, being smuggled through the legislature under misleading titles." The court noted that under its prior decisions, if the subject matter of an enactment is of general statewide concern, the law is not a local bill within the meaning of art. IV, sec. 18. The court held that because the bill failed that test, it was a private or local bill. Since it had been passed as part of the budget bill, which embraced more than one subject, and the subject of the statute was not expressed in the bill's title, enactment of the statute violated art. IV, sec. 18.

In *Milwaukee Brewers,* the court reviewed a statute which directed the department of health and social services to build a prison in the Menomonee Valley in Milwaukee. The statute was adopted as part of the 1983 budget bill, an omnibus bill. After reviewing *Soo Line* and other decisions, the court held "that a legislative provision which is specific to any person, place or thing is a private or local law within the meaning of art. IV, sec. 18, unless: 1) the general subject matter of the provision relates to a state responsibility of statewide dimensions; and 2) its enactment will have direct and immedi-

ate effect on a specific statewide concern or interest." 130 Wis. 2d at 115, 387 N.W.2d at 269. The court held that the prison-siting statute satisfied the two-part test and therefore was not a private or local law. Accordingly, enactment of the statute did not violate art. IV, sec. 18. 130 Wis. 2d at 120, 387 N.W.2d at 272.

The *Milwaukee Brewers* court added:

> The focus of the [prison-siting] bill was on a matter of statewide concern, not a private or local concern. Given the nature of the concern, and the direct and immediate effects this provision had on that concern, the elected representatives of those members of the public affected by this provision had to be aware of it. After six years of struggle, a $51 million prison in the heart of Milwaukee could scarcely be 'smuggled' through the legislature in any manner, shape, or form. The real nature and subject matter of this provision had to be known, and this, in turn, assured accountability. A legislator representing the affected area, who voted for the budget with this item included, could not with any credibility assert to a questioning constituent that the legislator did not know the prison was a part of the budget bill. Thus, the underlying purposes of Art. IV, Sec. 18, were met.

*Id.*

In *Brookfield,* the court dealt with legislation, general on its face, concerning the method by which sewerage districts containing cities of the first class must charge outlying municipalities for capital costs incurred to provide certain services. The legislation had been adopted as part of a budget bill and, like all budget bills, it covered many subjects. The court held that when legislation arises in a classification context and fails the test previously established by the court for classification legislation, it is a private or local law within the meaning of

art. IV, sec. 18. *Brookfield,* 144 Wis. 2d at 898, 426 N.W.2d at 593. The court did not define "classification," but stated that the statutory provisions before it "relate to an open, single member class. On their face they are not specific as to any person, place or thing." *Id.* at 903, 426 N.W.2d at 595. Since the legislation failed the classification test and had been included in an omnibus budget bill, art. IV, sec. 18 had been violated.

The *Brookfield* court held that for purposes of art. IV, sec. 18, classification legislation is "private or local" unless it satisfies a six-part test. (1) The classification must be based on substantial distinctions between the classes it creates. (2) The classification must be germane to the purpose of the law. (3) The classification must be open to additional members and not based on existing circumstances only. (4) The law must apply equally to all members of a class. (5) The characteristics of each class must be so different from those of the other classes as to reasonably suggest the propriety of substantially different legislation. (6) Curative legislation is general if it applies equally to all members of the class. 144 Wis. 2d at 907–08, 426 N.W.2d at 597.

## II.  DISCUSSION

We understand from the *Brookfield* decision that classification legislation is general on its face and applicable only to a certain class. It is legislation that is not specific to a person, place or thing. 144 Wis. 2d at 903, 426 N.W.2d at 595.

We conclude that sec. 119.23, Stats., is classification legislation. It applies only to a single class, cities of the first class. It is not facially specific as to persons, places

or things. Although it is entitled "Milwaukee Parental Choice program," that does not make the statute specific to Milwaukee, since the titles to sections of the statutes "are not part of the statutes." Section 990.001(6), Stats. That the class presently has only one member does not affect our conclusion, because the class is open to additional members that satisfy the population requirement and proclaim themselves first class cities.[5] *Brookfield,* 144 Wis. 2d at 903, 426 N.W.2d at 595. The statute is attacked as coming within the prohibition in art. IV, sec. 18, and we apply the six-part test described in *Brookfield* for a "private or local bill."

When applying that test, we cannot consider the specific characteristics of Milwaukee and its social and educational problems, even though it is presently the only member of the class. Our analysis must be limited to the characteristics of the chosen classification. The *Brookfield* court examined only the general qualities of a first class sewerage district, not the characteristics of the Milwaukee area sewerage district.

We cannot begin our analysis with the usual presumption[6] that the legislation is constitutional. "In [art. IV,] sec. 18 cases, because the legislature is alleged to have violated a law of constitutional stature which mandates the form in which bills must pass, the court will not indulge in a presumption of constitutionality, for to do so would make a mockery of the procedural constitutional requirement." *Brookfield,* 144 Wis. 2d at 912–13 n.5, 426 N.W.2d at 599.

---

[5]See note 4, *supra.*

[6]*See Ripley v. Brown,* 143 Wis. 2d 686, 691, 422 N.W.2d 608, 610 (1988).

The first part of the test is whether the classification enacted in sec. 119.23, Stats., is based on substantial distinctions between cities of the first class and other cities. *Id.* at 914–15, 426 N.W.2d at 600. Applying the *Brookfield* language to the facts before us, to satisfy the first part of the test "there must be something so substantially distinct" about cities of the first class "that it is necessary for them, as opposed to all other" cities, to have the Parental Choice Program described in sec. 119.23. *Id.* at 916, 426 N.W.2d at 600. No such distinction exists.

The *Brookfield* court could discern nothing about sewerage districts containing a city of the first class which required such districts to have the power to raise funds for capital costs by charging outlying municipalities by a special method. 144 Wis. 2d at 916–17, 426 N.W.2d at 600–01. We can discern nothing about a city of the first class (one with population over 150,000 and proclaiming itself a first class city) which requires it to have the Parental Choice Program described in sec. 119.23, Stats. The *Brookfield* court said that mere size did not justify legislation favoring a large sewerage district over a small one. *Id.* We are satisfied that mere size does not justify legislation favoring a large city but not a smaller city with a Parental Choice Program. We conclude that the law fails the first part of the *Brookfield* test for classification legislation, and sec. 119.23 was adopted as a "private and local bill" contrary to art. IV, sec. 18.

The *Brookfield* court nevertheless went on to examine the legislation before it under the second part of its test, "germaneness." The court said that for the challenged law to pass that test, the classification to which

163

its provisions apply "must be closely akin to, or have a close relationship with, the purposes of the provisions." 144 Wis. 2d at 917, 426 N.W.2d at 601. We therefore examine sec. 119.23, Stats., to determine whether its classification, cities of the first class, has a close relationship to the purpose of its provisions. We conclude it does not.

The purpose of sec. 119.23, Stats., is to conduct an experiment, a test program in education. However, no close relationship has been shown between that purpose and the statutory classification of cities of the first class. That the purpose of the legislation is experimentation is the only reasonable inference to be drawn from the provisions in sec. 119.23[7] designed to enable the legislature

---

[7]Those provisions include the following: To qualify for attendance at a nonsectarian private school, a pupil must be a member of a family that has a total family income that does not exceed an amount equal to 1.75 times a defined poverty level. Section 119.23(2)(a)1. Private schools which qualify for the Program must accept pupils on a random basis. Section 119.23(3). The state superintendent of public education must monitor the performance of pupils attending private schools under the Parental Choice Program. Section 119.23(5)(d) and (7)(b). Performance is evaluated in terms of the percentage of the pupils who advance from one grade level each year, the private school's average attendance rate, whether a certain percentage of the pupils demonstrate significant academic progress, and whether a certain percentage of the families of the pupils meet parental involvement criteria. Section 119.23(5)(d) and (7)(a)1-4. The state superintendent must annually report that information to the chief clerk of each house of the legislature. Section 119.23(5)(d). The state superintendent's report must compare the performance of the children attending the private schools with the performance of children enrolled in the public school district. The legislative audit bureau must annually conduct not only a financial but a "performance evaluation" audit and submit a report to the chief

164

to assess the results, positive or negative, of making available to low-income families an alternative method of education in private nonsectarian schools.

Why the experiment should be made only in a first class city is not apparent. That a city has a population of 150,000 and its mayor has proclaimed that it is a city of the first class, as provided in sec. 62.05(1)(a) and (2), Stats., has no relation to whether the experiment should be conducted in such a city. Cities of smaller size may be equally satisfactory sites for this experiment. Nor does a mayoral proclamation show greater suitability for this educational experiment. The city of Madison, for example, meets the population criterion to become a first class city, but has not yet declared itself to be one.[8] Madison would not become a more appropriate site for the experiment merely by making such a proclamation.

We therefore conclude that whether a city is classified as a city of the first class is not germane to the educational experiment directed by sec. 119.23, Stats. As classification legislation, the law fails the second *Brookfield* test for compliance with art. IV, sec. 18.

The respondents argue that our conclusion with regard to germaneness is wrong, since at this time Mil-

---

clerk of each house. Section 119.23(9)(b). As originally proposed and enacted, sec. 119.23 created a Parental Choice Program limited to five years' duration. The governor's veto of that sunset provision does not detract from the experimental intent of the legislature. The language of art. IV, sec. 18 is directed at bills passed by the legislature, not laws as subsequently signed into effect by the governor.

[8]According to the 1970 census, Madison had a population of 171,809. The 1980 census showed a population of 170,616. Madison's 1988 estimated population was 177,690. 1989–90 Wisconsin Blue Book at 769.

waukee is the only city of the first class in Wisconsin, and Milwaukee has serious educational problems. According to the brief of Superintendent Grover and Treasurer Smith, citing the Wisconsin Blue Book, these problems include large numbers of low-income, unemployed, or non-white residents and large numbers of school drop-outs.

But sec. 119.23, Stats., is not facially directed toward the city of Milwaukee, even though it is entitled "Milwaukee Parental Choice Program," because, as we have already noted, the title is not part of the statute. Section 990.001(6), Stats. The statute applies on its face to cities of the first class. We may not go behind the face of classification legislation to determine whether a member of the class has characteristics germane to the challenged legislation. The *Brookfield* court repeatedly referred in one form or another to the legislation before it as "general on its face" and distinguished it from legislation which was facially specific to a person, place or thing. That court considered only the general qualities of a first class sewerage district, not the characteristics of the Milwaukee area sewerage district.

Our conclusion regarding germaneness is supported by the *Brookfield* court's reliance on *Wagner v. Milwaukee County*, 112 Wis. 601, 88 N.W. 577 (1902). The *Brookfield* court said the case before it was "similar to *Wagner*." 144 Wis. 2d at 919, 426 N.W.2d at 601. The issue in *Wagner* was "whether an act general on its face, which allowed counties to build viaducts was constitutional." *Brookfield,* 144 Wis. 2d at 919, 426 N.W.2d at 601–02. As the *Brookfield* court noted, the *Wagner* court had held that the facial classification employed by the viaduct law was not germane to the purpose of the law. 144 Wis. 2d at 919–20, 426 N.W.2d at 602. The *Wagner*

166

court held the law unconstitutional under art. IV, sec. 18, despite the fact that only Milwaukee county qualified as a county which could build a viaduct under the law. *Brookfield,* 144 Wis. 2d at 919, 426 N.W.2d at 602; *Wagner,* 112 Wis. at 605–06, 88 N.W. at 578.

In concluding that sec. 119.23, Stats., violates art. IV, sec. 18, we have adhered to the analysis we believe the *Brookfield* decision requires of us. The court of appeals is an error-correcting court. *State v. Schumacher,* 144 Wis. 2d 388, 407, 424 N.W.2d 672, 679 (1988). As an error-correcting court, we are bound by the decisions of the Wisconsin Supreme Court, and we conclude *Brookfield* compels us to apply the test for classification legislation. However, were we not an error-correcting court, we might apply a variation on the *Milwaukee Brewers* test to experimental social legislation.

As we have said, we are satisfied that the purpose of sec. 119.23, Stats., is to conduct an experiment in education. An experiment tests a concept. A concept is as real in law as is a person, place or thing. Due process is an example. We believe that for purposes of art. IV, sec. 18 analysis, experimental legislation could be put in the specific person, place or thing category, whether or not it is also classification legislation. It is the nature of the experiment, not the classification, which should be subjected to the test for a private or local bill.

As an educational experiment, sec. 119.23, Stats., could meet the first part of the *Milwaukee Brewers* test. The experiment contemplated by sec. 119.23 involves a matter of statewide concern with respect to education. Whether nonsectarian private schools have a role in public education is a matter of substantial concern to

parents, students, teachers and taxpayers throughout the state.

The second part of the *Milwaukee Brewers* test, which requires a direct or immediate effect upon the matter of statewide concern, does not comfortably fit experimental legislation, since the effect of an experiment is postponed until the results are known. But when the results of this experimental legislation are known, they are likely, whatever their nature, to have an immediate and direct effect on education in this state. If the results are positive, sec. 119.23 may cause a change in public education. If they are negative, the program envisioned by sec. 119.23 will die or be considerably modified, and other alternatives may be seen in a different light. Whatever happens, a direct and immediate effect on public education will occur.

Moreover, application in this case of a slightly modified *Milwaukee Brewers* test could be consistent with that court's concern with "smuggling." See 130 Wis. 2d at 120, 387 N.W.2d at 272. As was true of the prison-siting legislation before the *Milwaukee Brewers* court, little or no risk exists that the Parental Choice Program was "smuggled" through the legislature. The program received considerable attention from the legislature in 1988, 1989 and 1990.

Legislative attention began in early 1988, when the governor proposed a Milwaukee parental choice program in a budget recommendation.[9] The joint committee on finance received a five-page memo from the Legislative Fiscal Bureau analyzing the proposal.[10] The bill was not considered by the assembly or senate. In 1989, the governor proposed both a Milwaukee parental choice program

[9]1987 A.B. 866

[10]Memo from Bob Lang, Director, Legislative Fiscal Bureau, to committee members, March 17, 1988.

and a statewide parental choice program as part of his budget.[11] The joint committee on finance deleted both programs, but when the budget reached the assembly in June 1989, an assembly amendment[12] was offered to insert a different Milwaukee parental choice program. The assembly removed this amendment from debate, but the legislature requested the legislative council to study the issue.[13]

In October 1989, forty-seven members of the assembly, with nine senators as cosponsors, introduced another Milwaukee parental choice program.[14] The bill was referred to the committee on urban education, which held a public hearing in February 1990 in Milwaukee. Appearances or registrations for or against the bill were made by community members, the governor, legislators, the state department of public instruction, the state association of school boards,. the city of Milwaukee, the Milwaukee public schools, private schools, the PTA, unions and others.[15] In March 1990, the committee offered an amended version to the assembly and recommended its passage. The assembly adopted one additional amendment and rejected several others, some by close votes, and passed the bill by a 62–35 vote.[16]

Still in March 1990, the language passed by the assembly was added to the senate budget adjustment bill, 1989 S.B. 542, which ultimately created the law before us, sec. 119.23, Stats. The bill included an introductory analysis by the legislative reference bureau describing

[11]1989 S.B. 31.

[12]Assembly amendment 8.

[13]Section 3035(2g), 1989 Act 31.

[14]1989 A.B. 601.

[15]Committee Record on 1989 A.B. 601.

[16]Bulletin of the proceedings of the Wisconsin Legislature, 1989–90 session, at 3–166.

169

the parental choice program. On the Senate floor, one fiscal amendment to the program was offered and adopted,[17] and the entire budget bill ultimately passed by a 26-7 vote.[18] The assembly passed the budget without reexamining the parental choice program, and the governor signed the bill. His only veto relating to parental choice was of the sunset provision.[19]

Since our error-correcting function cannot extend beyond the suggestion we have offered, we must halt our analysis with holding that sec. 119.23, although general on its face, is local legislation, within the meaning of art. IV, sec. 18, of the Wisconsin Constitution. As local legislation adopted in a multi-subject bill, the law is unconstitutional.

*By the Court.*—Judgment reversed.

## APPENDIX

Section 119.23, Stats., provides:

(1) In this section, "membership" has the meaning given in s.121.004(5).

(2)(a) Subject to par. (b), beginning in the 1990-91 school year, any pupil in grades kindergarten to 12 who resides within the city may attend, at no charge, any nonsectarian private school located in the city if all of the following apply:

1. The pupil is a member of a family that has a total family income that does not exceed an amount equal to 1.75 times the poverty level determined in accordance with criteria established by the director of the federal office of management and budget.

---

[17]Senate amendment 26.

[18]Bulletin of the proceedings of the Wisconsin Legislature, 1989-90 session, at 1-141.

[19]See sec. 228, 1989 Act 336.

2. In the previous school year the pupil was enrolled in the school district operating under this chapter, was attending a private school under this section or was not enrolled in school.

3. The private school notified the state superintendent of its intent to participate in the program under this section by June 30 of the previous school year.

4. The private school complies with 42 USC 2000d.

5. The private school meets all health and safety laws or codes that apply to public schools.

(b)1. No more than 1% of the school district's membership may attend private schools under par. (a) in any school year.

2. No more than 49% of a private school's enrollment may consist of pupils attending the private school under this section.

(3) The pupil or the pupil's parent or guardian shall submit an application, on a form provided by the state superintendent, to the participating private school that the pupil wishes to attend by June 30 of the school year immediately preceding the school year in which he or she wishes to enroll. Within 60 days after receiving the application, the private school shall notify the applicant, in writing, whether the application has been accepted. The state superintendent shall ensure that the private school determines which pupils to accept on a random basis.

(4) Upon receipt from the pupil's parent or guardian of proof of the pupil's enrollment in the private school, the state superintendent shall pay to the private school, from the appropriation under s.20.255(2)(fu), an amount equal to the total amount to which the school district is entitled under ss.121.08 and 121.085 divided by the school district membership. The state superintendent shall pay 25%

of the total amount in September, 25% in November, 25% in February and 25% in May.

(5) The state superintendent shall:

(a) Annually reduce the aid paid to the board under s.121.08 by an amount determined as follows:

1. Divide the total amount to which the school district is entitled under ss.121.08 and 121.085 by the school district membership.

2. Multiply the quotient under subd. 1 by the number of pupils attending private schools under this section.

(b) Ensure that aid paid to other school districts under s.121.08 is neither reduced nor increased as a result of the payments under sub. (4) or the reduction in aid to the board under par. (a) and that the amount of the aid reduction under par. (a) lapses to the general fund.

(c) Ensure that pupils and parents and guardians of pupils who reside in the city are informed annually of the private schools participating in the program under this section.

(d) Annually submit to the chief clerk of each house of the legislature for distribution to the appropriate standing committees under s.13.172(3), and to each private school participating in the program under this section, a report comparing the academic achievement, daily attendance record, percentage of dropouts, percentage of pupils suspended and expelled and parental involvement activities of pupils attending a private school under this section and pupils enrolled in the school district operating under this chapter.

(6) The board shall provide transportation to pupils attending a private school under this section if required under s.121.54 and may claim transportation aid under s.121.58 for pupils so transported.

(7)(a)   Each private school participating in the program under this section shall meet at least one of the following standards:

1.   At least 70% of the pupils in the program advance one grade level each year.

2.   The private school's average attendance rate for the pupils in the program is at least 90%.

3.   At least 80% of the pupils in the program demonstrate significant academic progress.

4.   At least 70% of the families of pupils in the program meet parent involvement criteria established by the private school.

(b)   The state superintendent shall monitor the performance of the pupils attending private schools under this section. If the state superintendent determines in any school year that the private school is not meeting at least one of the standards under par.(a), that private school may not participate in the program under this section in the following school year.

(8)   There is created a pupil assignment council composed of one representative from each private school participating in the program under this section. Annually by June 30, the council shall make recommendations to the participating private schools to achieve, to the extent possible, a balanced representation of pupils participating in the program under this section.

(9)(a)   The state superintendent may conduct one or more financial or performance evaluation audits, or both, of the program under this section.

(b)   The legislative audit bureau shall perform a financial and performance evaluation audit on the program under this section. The bureau shall submit copies of the audit report to the chief clerk of each house of the legislature for distribution to the appro-

173

priate standing committees under s.13.172(3) by January 15, 1995.