IN the INTEREST OF B.S., a person under the age of 18 years: STATE of Wisconsin, Appellant,

v.

B.S., Respondent.†
[Case No. 90-0830.]

IN RE the INTEREST OF K.E., a person under the age of 18 years: STATE of Wisconsin, Appellant,

v.

K.E., Respondent.† [Case No. 90-0831.]

IN the INTEREST OF M.P., a person under the age of 18 years: STATE of Wisconsin, Appellant,

v.

M.P., Respondent.† [Case No. 90-0832.]

Court of Appeals

*Nos. 90-0830, 90-0831, 90-0832. Oral argument November 15, 1990.—Decided April 2, 1991.*

(Also reported in 469 N.W.2d 860.)

†Petition to review denied.

For the appellant the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Sally L. Wellman,* assistant attorney general. Oral argument by *Sally L. Wellman.*

For the respondents the cause was submitted on the briefs of *Steven P. Weiss,* assistant state public defender. Oral argument by *Steven P. Weiss.*

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J. The state appeals from an order declaring that sec. 48.355(6), Stats.,[1] which provides for

---

[1] Section 48.355(6), Stats., provides:

(6) (a) If a child who has been adjudged delinquent violates a condition specified in sub.(2)(b)7, the court may impose on the child one of the sanctions specified in par.(d), if at the dispositional hearing under s.48.335, the judge explained the conditions to the child and informed the child of the possible sanctions under par.(d) for a violation.

(b) A motion for imposition of a sanction may be brought by the person or agency primarily responsible for the provision of dispositional services, the district attorney or the judge who entered the dispositional order. If the judge initiates the motion, that judge is disqualified from holding a hearing on the motion. Notice of the motion shall be given to the child, guardian ad litem, counsel, parent, guardian, legal custodian and all parties present at the original dispositional hearing.

(c) Before imposing any sanction, the court shall hold a hearing, at which the child is entitled to be represented by legal counsel and to present evidence.

(d) The court may order any one of the following sanctions:
 1. Placement of the child in a secure detention facility or juvenile portion of a county jail that meets the standards promulgated by

sanctions when a juvenile delinquent violates a dispositional order, is unconstitutional because it deprives juveniles of liberty without due process of law, contrary to the fourteenth amendment to the United States Constitution. The issues are (1) whether the sanctions statute is a punitive contempt provision which denies juveniles the procedural due process protections granted to adults facing punitive contempt; and (2) if it is not, whether the procedure specified in the statute provides adequate due process protections.

We conclude that the statute is not facially punitive or a contempt provision. We also conclude that nothing in the procedure it specifies deprives a juvenile of liberty without due process of law. To the extent that the statute fails affirmatively to specify an element of minimum due process, case law and other statutes fill the omission. We therefore reverse the judgment declaring the statute unconstitutional.

the department by rule, for not more than ten days and educational services consistent with his or her current course of study during the period of placement.

2. Suspension of or limitation on the use of the child's [motor vehicle] operating privilege, as defined under s.340.01(40), or of any approval issued under ch. 29 for a period of not more than 90 days. If the court suspends the child's operating privileges or an approval issued under ch. 29, it shall immediately take possession of the suspended license or approval and forward it to the department that issued it, together with the notice of suspension.

3. Detention in the child's home or current residence for a period of not more than 20 days under rules of supervision specified in the order.

4. Not more than 25 hours of uncompensated community service work in a supervised work program authorized under s.48.34(9).

It is important immediately to note that the constitutional challenge is to the *face* of the sanctions statute, not to its application. The statute has not yet been applied in these proceedings to any of the four juveniles involved. A statute challenged on due process grounds may be "constitutionally invalid as applied when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question." *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971). We deal here with the "general validity" of the statute and not with possible invalidity in its application.

Moreover, it is irrelevant that the present form of the statute results from a partial veto by the Governor of sec. 48.355(6) as enacted by the legislature, 1987 Wis. Act 27, sec. 880y. We ignore the respondents' criticism of the resulting statute as one which is not a "well thought out, well reasoned legislative enactment." The statute is a legislative result, since the Governor's partial veto was effective only because the legislature did not override it. *State ex rel. Kleczka v. Conta,* 82 Wis. 2d 679, 709, 264 N.W.2d 539, 552 (1978). We determine the facial constitutionality of the resulting statute, not its wisdom.

Briefly described, the statutory background is this: In Wisconsin, a "delinquent" is a child who is less than eighteen but twelve or more years old who has violated a state or federal criminal law. Section 48.02(3m), Stats. The juvenile court has exclusive jurisdiction over an alleged delinquent. Section 48.12(1), Stats. Whether delinquency allegations "are supported beyond a reasonable doubt" is determined at a fact-finding hearing. Section 48.31(1), Stats. The judge who adjudges a child

delinquent following a fact-finding hearing must enter a dispositional order. Section 48.34, Stats. The available dispositions under sec. 48.34 range from counseling through transfer to a secured correctional facility, and include special care or treatment, loss of a driver's license, or participation in a supervised work program. The chosen disposition "shall employ those means necessary to maintain and protect the child's well-being which are the least restrictive of the rights of the parent or child and which assure the care, treatment or rehabilitation of the child and the family, consistent with the protection of the public." Section 48.355(1), Stats.

The dispositional order must state "the conditions with which the child is required to comply." Section 48.355(2)(b)7., Stats. If the child violates a specified condition, and if at the dispositional hearing "the judge explained the conditions to the child and informed the child of the possible sanctions" for a violation, the statute permits the court to impose on the child one of the four "sanctions" specified in the sanctions statute, sec. 48.355(6), Stats.

With that background, we turn to facts in this appeal. The order appealed was entered in consolidated juvenile proceedings involving B.S., M.P. and K.E. The state subsequently moved to impose sanctions on each child pursuant to sec. 48.355(6), Stats., for having violated a condition of a delinquency dispositional order entered against the child. Each dispositional order stated the conditions with which the child was required to comply, and each sanction motion alleged a specific condition violation.

In the case of B.S., the sanction motion alleges that his condition violation was his failure to cooperate with all expectations of a particular program and to follow all prior conditions of supervision, to attend school without

unexcused absences, to obey reasonable rules of his mother and a social worker and to participate in counseling and therapy. In M.P.'s case, the motion states that he violated a condition that he commit no further law violation, his new violation being theft. The motion as to K.E. asserts that he violated specific conditions in that he failed to successfully participate in a particular program, missed curfews, had unexcused school absences, and used controlled substances.

Before the sanctions motions were heard, each child challenged the constitutionality of sec. 48.355(6), Stats., the sanctions statute. The challenges succeeded. The juvenile court held that the sanctions statute violates due process because it permits the court to order a delinquent child placed in detention for up to ten days for violating a court-ordered condition of a delinquency dispositional order, without giving the child the opportunity to purge the contempt. The court concluded that the statute is punitive and imposes punishment without due process of law.

The juvenile court concluded that the sanctions statute violates due process for a second reason. The statute provides only that before imposing a sanction the court must hold a hearing at which the child is entitled to counsel and to present evidence.[2] The court concluded that the statute is constitutionally defective because of omissions. It does not define the scope of the hearing[3] or the rights accorded to the child during the hearing, such as whether the child may have a jury trial and whether the allegations of the motion must be proved beyond a reasonable doubt.

---

[2]*See* sec. 48.355(6)(c), quoted in footnote 1.

[3]On appeal, the respondent minors do not discuss the "scope of the hearing" issue, and we do not address it.

Because the issues turn on the meaning and purpose of the juvenile sanctions statute and whether the statute is constitutional, only issues of law are presented for review. We decide those issues without deferring to the views of the juvenile court. *See Davis v. Grover,* 159 Wis. 2d 150, 158, 464 N.W.2d 220, 223 (Ct. App. 1990). When deciding such issues, we must presume that the statute is constitutional and we must insist that its alleged unconstitutionality be proved beyond a reasonable doubt. *Ripley v. Brown,* 143 Wis. 2d 686, 691, 422 N.W.2d 608, 610 (1988).

## II. ANALYSIS

We are guided by the due process analysis the United States Supreme Court employed in *Schall v. Martin,* 467 U.S. 253 (1984). The question before the *Schall* court was whether a New York juvenile statute imposed punishment for unadjudicated criminal acts because it authorized pretrial detention of a child charged with being a delinquent. The statute authorized such detention based on a finding that a serious risk existed that before the delinquency hearing the juvenile may commit an act which if committed by an adult would constitute a crime. The United States Court of Appeals had held that the statute violated due process because it imposed punishment without proof of guilt established beyond a reasonable doubt. *Martin v. Strasburg,* 689 F.2d 365, 373–74 (2d Cir. 1982).

The *Schall* court recognized that the due process clause applies to juvenile proceedings but noted that "the Constitution does not mandate elimination of all differences in the treatment of juveniles." 467 U.S. at 263. The state's interest in preserving and promoting the welfare of the child "makes a juvenile proceeding fundamen-

tally different from an adult criminal trial." *Id.* It is necessary to "strike a balance—to respect the 'informality' and 'flexibility' that characterize juvenile proceedings, and yet to ensure that such proceedings comport with the 'fundamental fairness' demanded by the Due Process Clause." *Id.* (citation omitted).

To decide whether the authorized detention was compatible with fundamental due process, the *Schall* court analyzed the New York statute in two steps. The court first inquired whether a pretrial detention of an alleged delinquent serves a legitimate state objective. The court identified those legitimate interests as protecting the community from future criminal conduct and protecting the juvenile from the consequences of the child's future criminal conduct. *Id.* at 264. The court then determined whether pretrial detention is imposed to punish or is rationally related to another purpose and is not excessive in relation to that purpose. *Id.* at 264, 269. After concluding that detention is not imposed to punish and is rationally related to the welfare of the child, the court reached the second step of its analysis: whether the procedural safeguards contained in the statute are adequate to authorize pretrial detention.

In the first step of its analysis, the *Schall* court identified the interests served by pretrial detention of juveniles and found both to be legitimate. *Id.* at 264. Those interests consist of protecting the community from future criminal conduct and protecting the juvenile from the consequences of the juvenile's future criminal conduct. *Id.* at 264. The court said regarding the juvenile:

> The juvenile's countervailing interest in freedom from institutional restraints, even for the brief time involved here, is undoubtedly substantial . . .. But that interest must be qualified by the recognition

390

that juveniles, unlike adults, are always in some form of custody. Children, by definition, are not assumed to have the capacity to take care of themselves. They are assumed to be subject to the control of their parents, and if parental control falters, the State must play its part as *parens patriae*. In this respect, the juvenile's liberty may, in appropriate circumstances, be subordinated to the State's "*parens patriae* interest in preserving and promoting the welfare of the child."

*Id.* at 265–66 (citations omitted).

The *Schall* court then inquired whether pretrial detention is compatible with the state's legitimate interests. The court said:

Even given . . . that pretrial detention may serve legitimate regulatory purposes, it is still necessary to determine whether the terms and conditions of confinement . . . are in fact compatible with those purposes. "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Absent a showing of an express intent to punish on the part of the State, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."

*Id.* at 269 (citations omitted).

■

We apply the *Schall* court's analysis to the law before us. Wisconsin's basic interest in delinquent children is implicit in the express legislative purpose of The Children's Code stated in sec. 48.01(1)(c), Stats.: "Consistent with the protection of the public interest, to

391

remove from children committing delinquent acts the consequences of criminal behavior and to substitute therefor a program of supervision, care and rehabilitation." The legitimacy of that interest is beyond dispute. *Schall* itself is authority for the proposition that society has a legitimate interest in protecting a juvenile from the consequences of his criminal activity. 467 U.S. at 465–66.

The many available dispositions of a child adjudged delinquent described in sec. 48.34, Stats., confirm that the intent of The Children's Code is to substitute a program of supervision, care and rehabilitation for the consequences of a delinquent's behavior that would otherwise be criminal. We need not detail those dispositions.[4] The dispositional order itself must "employ those means necessary to maintain and protect the child's well-being which are the least restrictive of the rights of the parent or child and which assure the care, treatment or rehabilitation of the child and the family, consistent with the protection of the public." Section 48.355(1), Stats. The order "is not for the purpose of penalty or punishment, but to effect a result which will serve the best interests of the child, its parents and the public." *State ex rel. State Public Defender v. Percy*, 97 Wis. 2d 627, 634–35, 294

[4]The authorized dispositions include counseling, placing a child under supervision of an agency, placing a child in his or her home, a foster home or a residential treatment center, transferring legal custody to a relative, county department or licensed child welfare agency, transferring legal custody in limited circumstances to the department for placement in a secure correctional facility, money forfeitures, revocation of motor vehicle operating privileges, participation in alcohol or drug abuse treatment programs, restitution for property damage or personal injuries, and attendance in various educational programs.

N.W.2d 528, 532 (Ct. App. 1980). The order must include written findings of fact and conclusions of law based on the evidence to support the disposition. Section 48.355(2), Stats. And it must contain specific information, including a "statement of the conditions with which the child is required to comply." Section 48.355(2)(b)7, Stats.

Since the state may impose conditions with which the child must comply, the state must have some method of enforcing those conditions. The chosen method is making available to the juvenile court the four sanctions set forth in sec. 48.355(6)(d), Stats. The constitutional propriety of those choices, as long as they are not punitive, is uncontested in this appeal. The question is whether the sanctions are punitive or merely incident to the state's legitimate interests. *Schall,* 467 U.S. at 269. If punitive, the sanctions are invalid. If merely incident to legitimate interests, the sanctions are constitutionally valid.

Unless the word "sanctions" itself establishes intent to punish, sec. 48.355(6), Stats., is devoid of language indicating that its purpose is punitive. The view that the sanctions are punitive is inconsistent with the entire purpose of The Children's Code. Punishment is absent from the express purposes of supervision, care and rehabilitation of delinquents, as stated in sec. 48.01(1)(c), Stats. Punishment is antithetical to the purpose of saving delinquent children from "the consequences of criminal behavior," as stated in the same subsection. It is impossible to reconcile a legislative intent to punish with either of those purposes. The power of the juvenile court to impose sanctions under sec. 48.355, Stats., is not the power to punish.

393

■

Given these circumstances, use of the word "sanctions" does not establish a legislative intent to punish. The word describes only the power conferred on the juvenile court to coerce a recalcitrant child to comply with the conditions stated in the court's dispositional order. Those conditions must be employed as "necessary to maintain and protect the child's well-being . . . and which assure the care, treatment or rehabilitation of the child and the family, consistent with the protection of the public," as required by sec. 48.355(1), Stats. "Sanctions" aid the court in furthering the objectives of a specific dispositional order designed for the welfare of the child, by giving to the court a modicum of control over a delinquent child which the court would not otherwise have.

■

Juveniles will look upon any of the four sanctions specified in sec. 48.355(6)(d), Stats., as punishment, and the juvenile placed in secure detention will surely believe that he or she is punished. But the power to impose sanctions is conferred to assist the court's furthering purposes having nothing to do with punishment. The juvenile's reaction does not impeach the legislature's intent when conferring that power or the court's intent when it exercises it. We are concerned in this appeal with the facial constitutionality of the power conferred, not its application.

This is not the only area of the law where the person on whom a restriction is imposed considers it punishment but because its purpose is otherwise the restriction is not punishment. Prison disciplinary action consisting of eight days of adjustment segregation, 180 days of pro-

gram segregation[5] and loss of all prisoner's accumulated good time imposed because of prisoner's escape is not punishment for double jeopardy purposes, since "[p]unishment is not the primary or even a principal reason for the [prison] regulations." *State v. Killebrew,* 115 Wis. 2d 243, 255–56, 340 N.W.2d 470, 477 (1983). *See also State v. Quiroz,* 149 Wis. 2d 691, 692, 439 N.W.2d 621, 622 (Ct. App. 1989) (eight days administrative segregation, 360 days program segregation and ten-day extension of prisoner's mandatory release date imposed for escape not punishment for double jeopardy purposes).

We turn to the individual sanctions in sec. 48.355(6)(d)1. through 4., Stats., to determine whether they disclose an intent to punish. The parties focus on the most restrictive sanction, placement in a secure detention facility (defined in sec. 48.02(16), Stats., as a locked facility approved by the department of corrections for the secure, temporary holding in custody of children) or in the juvenile portion of a county jail as authorized by sec. 48.355(6)(d)1., Stats.

---

[5]Inmates in program segregation are segregated from the general prison population in cells. They are not allowed to have television sets or radios for the first 35 days. They enjoy the same visitation, mail and phone privileges as inmates in the general prison population. Provision is made for social and clinical services, program and recreation opportunities and exercise. They cannot go to the canteen but may have items brought to their cells. Smoking is permitted unless it poses a hazard and talking is permitted in a normal tone during approved times. *State v. Killebrew,* 115 Wis. 2d at 251–52, 340 N.W.2d at 475–76. Inmates in adjustment segregation cannot leave their cells except for urgent medical or psychological attention, showers, visits and emergencies endangering their safety. They may possess less property than inmates in program segregation. Smoking is forbidden and each institution may establish procedures relating to talking. *Id.*

■ As was true of the detention reviewed in *Schall,* secure detention of a Wisconsin juvenile is strictly limited in time.[6] Placement in a juvenile portion of a county jail is limited to that portion which meets the standards promulgated by the department by rule. Educational services must be provided during the period of placement. The *Schall* court could not conclude that "the controlled environment briefly imposed by [New York] on juveniles in secure pretrial detention 'is imposed for the purpose of punishment' rather than as 'an incident of some other legitimate governmental purpose.' " 467 U.S. at 271 (citation omitted). We cannot conclude that the secure detention authorized by the sanctions statute is imposed for the purpose of punishment rather than as an incident to the legitimate purpose of a dispositional order.

We have no doubt but that a juvenile judge can misuse secure detention (or any other sanction) by applying it so unreasonably as to convert it to punishment. But this is true of any civil sanction intended for a non-punitive purpose. A civil sanction may be applied so disproportionately to an otherwise justifiable goal as to render the sanction punishment for double jeopardy purposes. *United States v. Halper,* 490 U.S. 435, 448–49 (1989).

■ When and if a juvenile judge is claimed to have improperly applied the sanction statute, the appellate courts will act to set aside that action as an abuse of judicial discretion or as an unconstitutional imposition of punishment.[7] We repeat: the only issue in this appeal

---

[6]The three juveniles in *Schall* were detained eight, fifteen and twenty-seven days, respectively. 467 U.S. at 259–60.

[7]Such an appeal will have to take into account the *Killebrew* court's statement: "When the principal purpose is nonpunitive,

is whether the sanction statute, on its face, deprives a delinquent of due process. We conclude that the provision for the severest sanction, secure detention, does not. Our conclusion applies as well to the other lesser sanctions, none of which discloses an intent to punish.

No basis exists for the conclusion that the sanction statute is a contempt power. First, it contains no reference to "contempt." Second, contempt powers are either punitive or remedial. The statute does not contemplate punitive action. Remedial contempt power usually authorizes a court to impose a restrictive condition upon a person until he or she performs a certain act or agrees to do so. Nothing in the four sanctions specified in sec. 48.355(6)(d), Stats., authorizes the trial court to use a sanction for remedial contempt purposes. For example, while sec. 48.355(6)(d)1, Stats., authorizes placement of a child in a secure detention facility or juvenile portion of a county jail, it does not authorize such placement until the child agrees to comply with a condition, even with a ten-day limit. Third, we have said, "We conclude that juvenile courts must follow the procedures set forth in ch. 785, Stats., when exercising contempt powers." *In re B.L.P.*, 118 Wis. 2d 33, 41, 345 N.W.2d 510, 515 (Ct. App. 1984). What we said in *B.L.P.* should be enough to show that we would reject any argument that the sanctions statute confers contempt powers.

Continuing to track the *Schall* analysis, we conclude that secure detention is not facially excessive in relation to its purpose. Secure detention is restricted in a manner consistent with its non-punitive purpose. As we have

the fact that a punitive motive may also be present does not make the action punishment." *Killebrew,* 115 Wis. 2d at 251, 340 N.W.2d at 475.

said, sanctions are available to provide the juvenile court with some control over the juvenile who does not comply with the conditions stated in the court's dispositional order. The mere fact that a scale of sanctions, graduated in severity, is available to a juvenile court is itself a reasonable provision. Secure detention can be appropriate when the juvenile's compliance cannot otherwise be obtained. When and if its use is claimed to be excessive, the appellate courts will be called upon to say so.

We conclude that neither secure detention nor any of the other available sanctions is, on its face, an excessive restriction in relation to the purpose of sanctions in The Children's Code.

We now reach the second step of the due process analysis in *Schall:* whether the procedural safeguards in the sanctions statute are facially adequate to authorize secure detention or any of the other sanctions in sec. 48.355(6)(d), Stats.

█

The juvenile delinquent who faces secure detention as a sanction for violating a dispositional order is comparable to the adult probationer who faces revocation of probation and incarceration for having violated the conditions of his probation. For that reason, we conclude that the minimum process due an adult probationer applies to the juvenile who faces the imposition of a sanction, secure or otherwise. In *Morrissey v. Brewer,* 408 U.S. 471, 488–89 (1972), the United States Supreme Court has identified the minimum process due the probationer who faces revocation. The sanctions statute, sec. 48.355(6), Stats., read in the context of existing statutes and case law, substantially meets the *Morrissey* requirements. The procedure provided in sec. 48.355(6) is therefore facially valid.

398

The juvenile and the adult probationer are similarly circumstanced. The adult probationer has already been convicted of a crime. The juvenile has already been found to have violated a state or federal criminal law. Section 48.02(3m), Stats. The finding that the adult was guilty was made beyond a reasonable doubt by a court or jury. The finding that the juvenile has violated a state or federal law was also made beyond a reasonable doubt by a court or a jury. Section 48.31(1) and (2), Stats. The rules of evidence applied at the adult's trial. The rules of evidence applied at the juvenile's fact-finding hearing. Section 48.299(4), Stats.

Following the adult's conviction, the trial court held a sentencing hearing to decide upon a disposition of the adult. Following a finding that the juvenile violated a criminal law, the juvenile court held a hearing to decide upon a disposition of the juvenile. Section 48.335(1), Stats. The adult placed on probation or parole has only a conditional liberty interest. *Morrissey,* 408 U.S. at 480–84. The juvenile "does not have a legitimate expectation of liberty" during the term of his or her dispositional order. *In re S.D.R.,* 109 Wis. 2d 567, 577, 326 N.W.2d 762, 767 (1982). The trial court imposed conditions on the adult's continued probation or parole. The juvenile court imposed conditions which the juvenile must meet as part of the disposition.

In the case of the adult probationer, "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole." *Morrissey,* 408 U.S. at 483. Both the state and the juvenile have a substantial interest in a prompt finding that the juvenile has or has

not violated a condition in the dispositional order. Delay reduces the practical value of a sanction in its application if the juvenile in fact violates the conditions of the disposition. The juvenile is entitled to a quick determination whether that is the fact. Just as the state has an interest in dealing with the probationer or parolee without the burden of a new adversary criminal trial, so the state has an interest in dealing with the juvenile at a sanctions hearing without the burdens of the hearing at which the juvenile was adjudged delinquent.

The respondents reject the foregoing comparison. They argue that "key distinctions" exist between a juvenile sanction hearing, and probation or parole revocation hearings. They assert that the adult facing a revocation has already been judicially determined to require incarceration but a juvenile facing a sanction need not have ever committed any conduct which would be punishable by incarceration or secure detention. They say that an adult facing revocation is never subject to a penalty more severe than that for the underlying offense, and that this is not true for a juvenile under the sanction statute. They conclude that juveniles faced with sanctions are entitled to all the rights of an accused at a criminal trial.

The "key distinctions" argument has no merit. The claimed distinctions do not exist. The argument that they do is based on the premise that sanctions are punishment. As we have shown and repeatedly emphasized, the sanctions statute is not facially punitive.

We conclude that because of their many similar circumstances, the juvenile claimed to have violated a disposition order and the adult claimed to have violated probation or parole have the same minimum due process rights. In the case of the adult, the *Morrissey* court concluded "what is needed is an informal hearing structured

400

to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Morrissey,* 408 U.S. at 484.

The *Morrissey* court then turned to "the nature of the process that is due, bearing in mind that the interest of both State and parolee will be furthered by an effective but informal hearing." *Morrissey,* 408 U.S. at 484–85. The court described the minimum requirements of due process under these circumstances as including (a) written notice of the claimed violations; (b) disclosure of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses; (e) a neutral and detached hearing body; and (f) a written statement by the fact-finder as to the evidence relied on and the reasons for revocation. *Id.* at 489. The evidence may include "material that would not be admissible in an adversary criminal trial." *Id.*

Read in the context of other statutes and judicial decisions, the sanctions statute substantially satisfies the *Morrissey* requirements for minimum due process. A motion for imposition of a sanction is necessary, notice of which must be given to the child, guardian ad litem, counsel, parent, guardian, legal custodian and all parties present at the original dispositional hearing. Section 48.355(6)(b), Stats. All motions must "state with particularity the grounds therefor." Section 802.01(2)(a), Stats. Evidence against the juvenile must be disclosed at the sanctions hearing. This is implicit in sec. 48.355(6)(b) and (c), Stats. Section 48.355(6)(c), Stats., provides that the child is entitled to present evidence at the hearing. The *Morrissey* requirement of an opportunity to be heard in person and to present witnesses and documentary evidence is satisfied.

*Morrissey* requires that the adult probationer have a right to confront and cross-examine adverse witnesses as a matter of due process. The sanctions statute neither grants nor denies a juvenile either right. We may read a procedural due process requirement into a statute. *See Chicago & N.W. Transp. Co. v. Pedersen,* 80 Wis. 2d 566, 573, 259 N.W.2d 316, 320 (1977). *Morrissey* supplies both omissions. Juvenile courts must afford juveniles the right to confront and cross-examine witnesses at a sanctions hearing.

The *Morrissey* requirement of a neutral and detached hearing body is satisfied. The hearing is held before the juvenile judge unless the judge initiated the sanctions motion. Section 48.355(6)(c), Stats.

The *Morrissey* requirement of a written statement by the fact-finder as to the evidence relied on and the reasons for the chosen sanction is substantially satisfied by the scope of appellate review. Whether to impose a sanction is discretionary. An order imposing a sanction is therefore subject to review for abuse of discretion. Discretion is abused unless the trial court employs "a process of reasoning which depends on facts that are in the record or are reasonably derived by inference from the record . . .." *Shuput v. Lauer,* 109 Wis. 2d 164, 177, 325 N.W.2d 321, 328 (1982). The proper exercise of discretion therefore requires findings of fact. *Lavota v. Lavota,* 70 Wis. 2d 971, 974, 236 N.W.2d 224, 225 (1975). If the findings are not in writing, they will appear in the record. If they do not, we may reverse or remand for making findings. *Id.*[8] The proper exercise of discretion at a sanctions hearing also requires that the court

---

[8]The third option—to affirm if the judgment is supported by the evidence—is inappropriate in view of the *Morrissey* requirements.

explain the reasons for the court's action. The reasons must be given. "In all Anglo-American jurisprudence a principal obligation of the judge is to explain his reasons for his actions. His decisions . . . cannot be reviewed by the appellate courts unless the reasons for decisions can be examined." *McCleary v. State,* 49 Wis. 2d 263, 280-81, 182 N.W.2d 512, 521 (1971).

Respondents complain of procedural omissions in the sanctions statute. They correctly assert that the statute does not establish the burden of proof which the state must meet. Failure to specify the level of the burden of proof does not deprive the statute of constitutionality. The *Morrissey* due process requirements do not allude to the burden of proof or its level. Nowhere in the Wisconsin statutes or the state or federal constitutions is the burden of proof for criminal prosecution defined. It can be judicially determined. The United States Supreme Court determined the necessary burden of proof for a criminal conviction. *In re Winship,* 397 U.S. 358 (1970).

The Wisconsin judiciary has performed the same function for The Children's Code. *See In re T.M.S.,* 152 Wis. 2d 345, 356-57, 448 N.W.2d 282, 286-87 (Ct. App. 1989) (although sec. 48.355 fails to specify level of proof for CHIPS disposition and extension hearings, ordinary burden of proof held applicable). The juvenile subject to sanctions has already been adjudged delinquent on the basis of proof beyond a reasonable doubt. Section 48.31(1), Stats. No level of proof is specified for the next stage, the dispositional hearing. It is not surprising that the level of proof at the sanctions hearing is unspecified when none is specified for the disposition hearing. We need not decide the appropriate level of proof at a sanctions hearing. We decide only that the sanctions statute is facially valid even though it does not specify the level.

The respondents correctly state that the statute fails to specify that the rules of evidence apply at a sanction hearing. This, too, is no surprise, since the statute governing disposition hearings, sec. 48.355, Stats., fails to state whether the rules of evidence apply. The rules of evidence are not essential to the statute's constitutionality. The *Morrissey* due process requirements themselves are silent regarding the rules of evidence. The *Morrissey* court said that "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." 408 U.S. at 489.

The sanctions statute fails to expressly confer the right to remain silent, but neither does it deny a juvenile that right. As a matter of constitutional law, a juvenile has the right to remain silent. *In re Gault,* 387 U.S. 1, 55 (1967). *Gault* supplies the omission.

The respondents note that the sanctions statute does not provide for a substitution of the judge at a sanctions hearing, except that a judge who brings the motion is disqualified from hearing it. Section 48.355(6)(b), Stats. Section 48.29, Stats., allows for substitution of the judge assigned to certain types of proceedings, but not disposition or sanction hearings. However, no claim is made that statutory substitution is a constitutional right. The legislature having omitted the right to substitute the judge at a sanction hearing, the right does not exist. If a juvenile judge is shown not to be neutral and detached, as *Morrissey* requires, 408 U.S. at 485, the defect can be corrected by appeal.

We conclude that the sanctions statute does not facially deny juveniles of liberty without due process of

law. The juvenile court's order declaring the contrary must be reversed.

*By the Court.*—Order reversed and cause remanded.