STATE of Wisconsin, Plaintiff-Appellant,

v.

Nilda E. QUIROZ, Defendant-Respondent.

Court of Appeals

*No. 88-1589-CR. Submitted on briefs February 23, 1989.—
Decided March 22, 1989.*

(Also reported in 439 N.W.2d 621.)

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Michael R. Klos,* assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Elizabeth E. Stephens,* assistant state public defender.

Before Scott, C.J., Nettesheim and Sundby, JJ.

NETTESHEIM, J. The state of Wisconsin appeals from an order dismissing a criminal complaint against Nilda Quiroz for escape, contrary to sec. 946.42(3)(a), Stats. The trial court held that the criminal action against Quiroz was barred under the fifth amendment double jeopardy clause because Quiroz had already been punished for the escape when her mandatory release date was extended by the prison disciplinary committee. Relying on *State v. Killebrew,* 115 Wis. 2d 243, 340 N.W.2d 470 (1983), we conclude the criminal proceeding against Quiroz is not barred by double jeopardy considerations despite the prison disciplinary action. We also conclude that extension of Quiroz' mandatory release date is not punishment *per se* and therefore also not violative of her double jeopardy right. Accordingly, we reverse and remand for further proceedings on the criminal complaint.

While serving a two-year sentence at Taycheedah Correctional Institution, Quiroz absconded from the institution grounds. She was recaptured a few hours later, and prison officials filed a conduct report alleging violation of a prison rule. A prison disciplinary committee determined that Quiroz had left the prison without

permission and imposed eight days of administrative segregation, 360 days of program segregation, and a ten-day extension of Quiroz' mandatory release date.

At the time of the alleged escape, Quiroz' mandatory release date was established at sixteen months, which is two-thirds of her two-year sentence. *See* sec. 53.11(1), Stats. The committee's disciplinary action had the effect of not only extending Quiroz' mandatory release date by the ten days, *see* sec. 53.11(2)(a), but also extending such date by one day for every two days she actually spent in program segregation, *see* sec. 53.11(2)(b). The institution registrar testified that Quiroz could be removed from program segregation earlier than 360 days if security determines that her conduct merits the action. *See also* Wis. Adm. Code sec. **HSS 303.70**(12). Assuming, however, that Quiroz spends the entire 360 days in program segregation, her mandatory release date would be extended by a total of 190 days as a result of the prison disciplinary action.

Subsequently, Quiroz was charged in circuit court with criminal escape based upon the same incident and facts which resulted in the prison disciplinary action. *See* sec. 946.42(3)(a), Stats. Quiroz moved to dismiss the complaint on the grounds that she had already been punished and therefore the criminal proceedings were barred under the fifth amendment double jeopardy clause. The trial court agreed.

In reaching its conclusion, the trial court rejected the state's argument that *Killebrew* controlled the issue. In *Killebrew,* the supreme court held that a criminal escape prosecution is *not* barred by the double jeopardy clauses of the Wisconsin and federal constitutions if the escapee has already been subjected to prison disciplinary action. *Killebrew,* 115 Wis. 2d at 244, 340 N.W.2d at 472. The trial court reasoned that the

*Killebrew* holding was limited to cases in which the inmate lost good time. The trial court stated, "My understanding is a forfeiture of good time ... would never extend the mandatory release date." Concluding that the extension of Quiroz' mandatory release date constituted punishment for purposes of the double jeopardy clause, the trial court ordered the criminal escape charge against Quiroz dismissed.

The state appeals, arguing that *Killebrew* controls. Quiroz responds that: (1) the *Killebrew* rule is inapplicable to her case because *Killebrew* does not specifically address whether extension of a mandatory release date constitutes punishment; (2) *Killebrew* is distinguishable because it was decided under sec. 53.11, Stats. (1981–82), which was subsequently amended to evince a more punitive intent; and (3) extension of a prisoner's mandatory release date constitutes punishment *per se.* We are unpersuaded by Quiroz' arguments.

█

The Wisconsin Supreme Court has held that administrative disciplinary action taken by prison authorities is not punishment under the constitution and therefore the state is not barred by the double jeopardy clause from prosecuting the defendant for escape. *Killebrew,* 115 Wis. 2d at 256, 340 N.W.2d at 477. In *Killebrew,* two cases were consolidated on appeal. One of the defendants, Espinoza, had escaped from prison and was administratively disciplined under Wis. Adm. Code ch. **HSS 303** (1980). This discipline included 180 days of program segregation, eight days of adjustment segregation and loss of all accumulated good time. *Killebrew,* 115 Wis. 2d at 245–46, 340 N.W.2d at 472.

In analyzing whether this constituted "punishment" for double jeopardy purposes, the supreme court

determined the intent behind the prison disciplinary rules codified in Wis. Adm. Code ch. **HSS 303** (1980). *Killebrew,* 115 Wis. 2d at 251, 340 N.W.2d at 475. To do so, the court examined the stated objectives of the disciplinary rules in Wis. Adm. Code sec. **HSS 303.01**(3) (1980), and the accompanying notes. *Killebrew,* 115 Wis. 2d at 254-55, 340 N.W.2d at 477. The court concluded that "[p]unishment is not the primary or even a principal reason for the regulations. The primary purposes behind the ... regulations are maintaining institutional order and safety and assisting individual rehabilitation." *Id.* at 256, 340 N.W.2d at 477. Therefore, the disciplinary action, including the forfeiture of accumulated good time, was not punishment under the constitution, and the state was not barred by the double jeopardy clause from prosecuting Espinoza for escape. *Id.*

Quiroz first argues that the supreme court's analysis of the intent behind the prison disciplinary rules "was not fully relevant to the issue presented in *Killebrew.*" Instead of determining intent by looking at the "Applicability and purposes" section of Wis. Adm. Code ch. **HSS 303,** Quiroz suggests that the *Killebrew* court should have analyzed each individual rule under which Espinoza was disciplined in order to determine the intent behind the disciplinary rules of ch. **HSS 303.** In essence, Quiroz is arguing that the supreme court wrongly decided *Killebrew* and that this court should employ a different analysis when deciding a *Killebrew* double jeopardy issue. Even if we were persuaded by Quiroz' argument, we are bound by supreme court precedent in deciding the issue before us. *State v. Grawien,* 123 Wis. 2d 428, 432, 367 N.W.2d 816, 818 (Ct. App. 1985). We are powerless to alter supreme court law on this question.

Next, Quiroz attempts to distinguish *Killebrew.* She notes that she, like Espinoza, was disciplined under Wis. Adm. Code ch. **HSS 303.** Quiroz claims that since *Killebrew,* there has been "substantial change" in the administrative rules. Thus, she reasons that a different result is mandated. We disagree.

The *Killebrew* analysis relied solely on Wis. Adm. Code sec. **HSS 303.01**(3), and the accompanying notes in determining whether the prison disciplinary action was punishment for double jeopardy purposes. *Killebrew,* 115 Wis. 2d at 254–55, 340 N.W.2d at 477. Our research reveals that this section and the accompanying notes remain in effect and unchanged since the *Killebrew* decision. *Compare* Wis. Adm. Code sec. **HSS 303.01**(3) (1980) and accompanying notes *with* Wis. Adm. Code sec. **HSS 303.01**(3) (1987) and accompanying notes. This alone convinces us that *Killebrew* governs this case and we should not tamper with it.

Moreover, Quiroz does not clarify for us whether the "changes" she alludes to are post-*Killebrew* enactments or material already on the books but which the *Killebrew* court deemed not worthy of mention. Regardless, we conclude that even if the changes are post-*Killebrew,* they do not undo the effect of *Killebrew* here. The "changes" cited by Quiroz all relate to punishment or have a punitive ring. Therefore, she reasons that punishment under the constitution is established. But, the supreme court in *Killebrew* did not say that prison disciplinary proceedings were not punitive in nature. Rather, the court concluded that "[p]unishment is not the *primary* or ... *principal* reason for the regulations." *Killebrew,* 115 Wis. 2d at 256, 340 N.W.2d at 477 (emphasis added). The basis for this conclusion was Wis. Adm. Code, sec. **HSS 303.01**(3) (1980) and the accompanying notes. As noted, these

remain unchanged to this day. The "changes" in the code do not affect the mandate of *Killebrew*.

Quiroz claims two additional distinctions between her case and *Killebrew:* (1) Espinoza lost good time, whereas here Quiroz has suffered the extension of her mandatory release date; and (2) the "forfeiture of good time" statute, sec. 53.11, Stats. (1981–82), has been replaced by the "extension of mandatory release" statute, the current sec. 53.11, which is more onerous and punitive than the prior law.

We see these as distinctions without a difference for purposes of double jeopardy considerations. The effect of losing good time under the prior law was to postpone the date when the prisoner was scheduled for release if good behavior had ensued. *See* sec. 53.11 (1981–82). Extension of a mandatory release date under the present law creates the identical result. *See* sec. 53.11. Despite the change in the law from a "loss of good time" approach to an "extension of mandatory release date" approach, *Killebrew* still mandates that the primary purpose behind prison disciplinary actions is not punishment but rather is "maintaining institutional order and safety and assisting individual rehabilitation." *Killebrew,* 115 Wis. 2d at 256, 340 N.W.2d at 477.

Next, Quiroz asks that we declare the extension of her mandatory release date to be punishment *per se* for purposes of double jeopardy considerations. This argument was not made in *Killebrew.* Quiroz asserts that prisoners have a protected liberty interest in earned good time. She cites *Wolff v. McDonnell,* 418 U.S. 539, 556–57 (1974), for support. Therefore, she argues that deprivation of such a liberty interest represents punishment under the constitution. We disagree.

The United States Supreme Court in *Wolff* stated that a prisoner does not have a constitutional right to good time for good behavior. *Id.* at 557. However, once a state provides a statutory right to good time and a procedure for its forfeiture, the prisoner is entitled to minimum due process protections when the state seeks to invoke the forfeiture provisions. *Id.* We fully accept the *Wolff* holding and rationale. However, the liberty interest recognized for purposes of procedural due process does not translate into a liberty interest for purposes of double jeopardy. The *Wolff* concept of a protected liberty interest does not apply to the double jeopardy issue in this case.

Beyond *Wolff,* Quiroz contends that at sentencing a prisoner obtains a liberty interest in serving merely two-thirds of the sentence pursuant to the mandatory release statute, sec. 53.11(1), Stats. Therefore, Quiroz argues that any extension of that release date is punishment. This is an erroneous view of the mandatory release law and we reject it. Quiroz' sentence is for two years—not two-thirds of her sentence. Quiroz' statutory eligibility for earlier release is *conditional* upon her good behavior. It is an entitlement which must be earned in the prison setting and is subject to forfeiture if not so earned.

A fixed sentence does not endue a prisoner with a double jeopardy right to a lesser sentence. Criminal misconduct by a prisoner is not immunized from criminal prosecution when the misconduct also results in requiring the prisoner to serve some or all of the sentence originally imposed.

*By the Court.*—Order reversed and cause remanded.