STATE of Wisconsin, Plaintiff-Respondent,

v.

Sidney FONDER, Defendant-Appellant.†

Court of Appeals

*No. 90–0687–CR. Submitted on briefs December 11, 1990.—Decided April 25, 1991.*

(Also reported in 469 N.W.2d 922.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Mary E. Waitrovich,* first assistant state public defender.

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Michael R. Klos,* assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J. Sidney Fonder appeals from a judgment of conviction for battery to a correctional officer, sec. 940.20(1), Stats. The issue is whether criminal prosecution of a prison inmate for battery subjects the inmate to double jeopardy after prison officials took disciplinary action against him for the same battery. We conclude that the inmate is not subjected to double jeopardy, and we therefore affirm.

Fonder is an inmate of Waupun Correctional Institution. On May 11, 1988, he fought with prison guards, injuring three of them. On May 20, 1988, during institutional disciplinary proceedings, he was found guilty of violating three prison regulations: Wis. Adm. Code sec. HSS 303.12 (May 1988), battery; Wis. Adm. Code sec. HSS 303.16 (May 1988), threats; and Wis. Adm. Code sec. HSS 303.24 (May 1988), disobeying orders. He was given a disposition of eight days of adjustment segregation, 360 days of program segregation, and a ten-day extension of his mandatory release date.[1]

---

[1]Program segregation entails the following: one inmate to a cell, unless overcrowding prevents it; provision for a clean mattress, sufficient light for reading, sanitary toilet and sink, and

A criminal action charging three counts of battery to a correctional officer was subsequently brought against Fonder. He moved to dismiss the complaint on double jeopardy grounds. After the trial court denied the motion, Fonder pleaded no contest to one count and was sentenced to nine months consecutive to his existing sentence.

■ Fonder argues that the prison disciplinary action combined with the criminal prosecution for the same incident violated his right to be free from double jeopardy. U.S. Const. amend. V; Wis. Const. art. I, sec. 8. The constitutional issue is a question of law. We decide such questions without deference to the trial court. *Davis v. Grover,* 159 Wis. 2d 150, 158, 464 N.W.2d 220, 223 (Ct. App. 1990). Fonder concedes that we recently rejected the same argument he makes here in *State v. Quiroz,* 149 Wis. 2d 691, 439 N.W.2d 621 (Ct. App. 1989), where we relied on *State v. Killebrew,* 115 Wis. 2d 243, 340 N.W.2d 470 (1983). Fonder urges us to overrule

adequate ventilation and heating; upon request, provision for adequate clothing, bedding, hygiene supplies, paper, pens, and books; the same food as provided to the general population; unless permitted by written policy, no electronic equipment or typewriters in the cells (incentives are provided to earn the privilege of having these items); visitation, telephone, and mail rights; showers at least every four days; opportunity to participate in various programs and services; permission to leave cells for medical or clinical attention, showers, visits, exercise, and emergencies endangering inmate safety; approved items from the canteen may be brought to the inmate; smoking and talking are permitted, but regulated. Wis. Adm. Code sec. DOC 303.70.

Adjustment segregation prohibits smoking and places further restrictions on personal property permitted in the cells. The maximum term in adjustment segregation is eight days. Wis. Adm. Code sec. DOC 303.69.

*Quiroz* and to distinguish *Killebrew* from the present case.

*Killebrew* was a consolidated appeal of two cases, each involving the same double jeopardy argument. Each appellant was an inmate who had been subjected to disciplinary proceedings for escape. One had received a disposition of 360 days of program segregation and a forfeiture of five days earned good time. The other had received a disposition of eight days of adjustment segregation, 180 days of program segregation and forfeiture of all accumulated good time. Each was subsequently charged with escape in violation of sec. 946.42(3)(a), Stats. (1979–80). Each argued that the criminal charge subjected him to double jeopardy, since he had already been punished by prison officials.

The *Killebrew* court reasoned that the criminal charge would be barred by double jeopardy considerations only if the prison disciplinary action constituted punishment. *Killebrew,* 115 Wis. 2d at 256, 340 N.W.2d at 477. To determine what constitutes punishment the court applied a "principal purpose" test: "Governmental action is punishment under the double jeopardy clause if its principal purpose is punishment, retribution or deterrence." *Killebrew,* 115 Wis. 2d at 251, 340 N.W.2d at 475. The court held that the principal purposes of the disciplinary proceedings "are maintaining institutional order and safety and assisting individual rehabilitation." *Killebrew,* 115 Wis. 2d at 256, 340 N.W.2d at 477. The court concluded that prison disciplinary action is not punishment and thus the inmate was not subjected to double jeopardy. *Killebrew,* 115 Wis. 2d at 256, 340 N.W.2d at 477.

A similar situation arose in *Quiroz,* where an inmate escaped and was recaptured. Prison officials imposed eight days of administrative segregation, 360 days of pro-

gram segregation, and a ten-day extension of the inmate's mandatory release date. The inmate was later charged in circuit court for criminal escape. He moved to dismiss the charge, claiming that the criminal proceedings constituted double jeopardy. The trial court agreed and dismissed the case. Concluding that *Killebrew* controlled the case and that the inmate's double jeopardy rights were not violated, we reversed. *Quiroz,* 149 Wis. 2d at 692, 439 N.W.2d at 622.

Fonder argues that because of a statutory change between *Killebrew* and *Quiroz,* we mistakenly relied on the former when deciding the latter. In *Killebrew,* prison disciplinary action resulted in a loss of good time. In this appeal, as in *Quiroz,* disciplinary action extended the mandatory release date. Since statutory good time was eliminated after *Killebrew,* prison officials now extend mandatory release dates.

Fonder argues that the legislature intended the extension of mandatory release dates as punishment. He points to a note in the drafting file of 1983 Wis. Act 528.[2] The note states: "That portion of the present statute [sec. 53.11(2), Stats. (1981–82)] dealing with *punishment for institutional misconduct* has been changed . . .." Wisconsin Legislative Reference Bureau, drafting

---

[2]1983 Wis. Act 528 amended sec. 53.11(2), Stats. (1983–84) (renumbered to sec. 302.11(2), Stats.).

Section 302.11(2), Stats., provides in part:

(a) Any inmate who violates any regulation of the prison or refuses or neglects to perform required or assigned duties is subject to extension of the mandatory release date as follows: 10 days for the first offense, 20 days for the 2nd offense and 40 days for the 3rd or each subsequent offense.

(b) In addition to the sanctions under par. (a), any inmate who is placed in adjustment, program or controlled segregation status shall have his or her mandatory release date extended by a number of days equal to 50% of the number of days spent in segregation status . . ..

file for 1983 Wis. Act 528, *Proposed Revision of Good Time Statutes,* Sept. 14, 1983, p.2. (emphasis added). We are not persuaded that the note reflects the legislature's intent. The legislative reference bureau did not refer to the note or to punishment in its analysis of 1983 Assembly Bill 1011, which resulted in 1983 Wis. Act 528.

Moreover, the *Killebrew* court said: "When the principal purpose is nonpunitive, the fact that a punitive motive may also be present does not make the action punishment." *Killebrew,* 115 Wis. 2d at 251, 340 N.W.2d at 475. As we have noted, the *Killebrew* court described the principal purposes of the prison disciplinary rules as maintenance of institutional order and safety and assistance of individual rehabilitation, even though the notes also specified punishment as a purpose. *Killebrew,* 115 Wis. 2d at 256, 340 N.W.2d at 477. The purposes of the rules stated in Wis. Adm. Code sec. DOC 303.01 are the same today as they were when *Killebrew* was decided.

Fonder also relies on the testimony of Owen Mooney, Registrar at the Waupun Correctional Institution. Mooney testified that "[p]unishment is one of the purposes of the disciplinary action." Mooney's testimony adds nothing new. He testified that other purposes include maintenance of order, safety and security, and rehabilitation of the inmate.

■The conclusions in *Killebrew, Quiroz* and this appeal are in good company. Under various rationales, many federal and state courts have concluded that prison disciplinary action followed by criminal prosecution for the same incident does not violate the double jeopardy clause.[3]

---

[3]*See United States v. Rising,* 867 F.2d 1255 (10th Cir. 1989) (criminal prosecution of prisoner for murder of fellow prisoner not barred by prior imposition of administrative punishment);

In sum, Fonder's arguments were essentially answered in *Killebrew,* more specifically answered in

*United States v. Salazar,* 505 F.2d 72 (8th Cir. 1974) (administrative punishment and subsequent criminal proceeding for prisoner's same act does not violate double jeopardy); *United States v. Williamson,* 469 F.2d 88 (5th Cir. 1972) (per curiam) (no merit to prisoner's contention that his loss of "good time" credits combined with his subsequent conviction and sentence for unlawful escape constituted double jeopardy); *Hutchison v. United States,* 450 F.2d 930 (10th Cir. 1971) (per curiam) (forfeiture of 375 days of "good time" as administrative punishment in combination with criminal conviction does not constitute double jeopardy); *United States v. Stuckey,* 441 F.2d 1104 (3rd Cir.) (per curiam) *cert. denied,* 404 U.S. 841 (1971) (prisoner's placement in segregation unit for carrying knife-like instrument does not bar subsequent criminal prosecution for same conduct); *United States v. Lepiscopo,* 429 F.2d 258 (5th Cir.), *cert. denied,* 400 U.S. 948 (1970) (criminal prosecution of prisoner for attempted escape does not constitute double jeopardy after prisoner had been punished by prison officials); *United States v. Apker,* 419 F.2d 388 (9th Cir. 1969) (per curiam) (prisoner's placement in segregated confinement for 37 days for attempted escape and subsequent conviction for same offense does not implicate double jeopardy clause); *United States v. Shapiro,* 383 F.2d 680 (7th Cir. 1967) (imposition of administrative discipline and criminal punishment are "distinct and separate" even though based on same act, and therefore no double punishment); *Gloria v. Miller,* 658 F. Supp. 229 (W.D. Okla. 1987) (memorandum opinion) (prisoner's double jeopardy claim, based on disciplinary proceedings and criminal conviction without merit); *Orosco v. United States,* 526 F. Supp. 756, 759 (W.D. Okla. 1981) ("It is well established that administrative punishment imposed by prison officials does not render a subsequent judicial proceeding, criminal in nature, violative of the prohibition against double jeopardy"); *People v. Jocelyn,* 537 N.E.2d 1086, *cert. denied,* 545 N.E.2d 121 (1989) (revocation of 360 days of prisoner's good time no bar to subsequent criminal

*Quiroz,* and are contrary to the overwhelming view of other courts.[4] Because punishment was not the principal

prosecution for escape); *State v. Kjeldahl,* 278 N.W.2d 58 (Minn. 1979) (criminal prosecution is not barred after prison disciplinary measures); *State v. Loomis,* 629 S.W.2d 637 (Mo. Ct. App. 1982) (administrative sanction imposed on prisoner for carrying concealed weapon was exercise of administrative authority, thus subsequent criminal conviction for same act was not a punishment); *State v. Maddox,* 208 N.W.2d 274 (Neb. 1973) (prisoner's loss of good time for escape does not place him in jeopardy, thus subsequent conviction for escape does not constitute double jeopardy); *People v. Frye,* 144 A.D.2d 714, 534 N.Y.S.2d 735 (1988) (no double jeopardy when prison disciplinary proceeding followed by criminal proceeding based on same prisoner acts); *Dean v. State,* 778 P.2d 476 (Okla. Crim. App. 1989) (administrative disciplinary penalties for possession of marijuana no bar to criminal prosecution of prisoner for same offense); *State v. Weekley,* 240 N.W.2d 80 (S.D. 1976) (administrative discipline designed to ensure orderly administration of the prison and criminal prosecution designed to vindicate public justice); *State v. Lebo,* 282 A.2d 804, 805 (Vt. 1971) (". . . neither federal nor state concepts of double jeopardy include administrative discipline").

[4]After briefs were filed, Fonder asked this court to also consider a United States Supreme Court decision, *United States v. Halper,* 490 U.S. 435 (1989), which was decided after *Quiroz.*

The *Halper* court said that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment . . .." 435 U.S. at 448. This language suggests that if punishment is a purpose of a civil sanction, then the double jeopardy protection is implicated. The court went on to hold that "a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." 435 U.S. at 448-49.

*Halper* is inapposite. *Halper* dealt with monetary damages

purpose of the disciplinary action taken against Fonder, the criminal proceeding based on the same incident did not subject him to double jeopardy. We affirm the judgment.

*By the Court.*—Judgment affirmed.

SUNDBY, J. *(concurring).* I agree that *State v. Quiroz,* 149 Wis. 2d 691, 439 N.W.2d 621 (Ct. App. 1989) requires that we affirm the judgment convicting Fonder of battery to a corrections official, contrary to sec. 940.20(1), Stats. I suggest, however, that we should certify this appeal to the Wisconsin Supreme Court to allow it to consider *Quiroz* and *State v. Killebrew,* 115 Wis. 2d 243, 340 N.W.2d 470 (1983), in light of the legislation entitling each inmate to mandatory release on parole. Section 53.11(1), Stats. (1987–88).[1] Section 53.11, Stats. (1987–88), provided in part:

> (1) The warden or superintendent shall keep a record of the conduct of each inmate, specifying each infraction of the rules. Except as provided in subs. (1m), (7) and (10), each inmate is entitled to mandatory release on parole by the department. The mandatory release date is established at two-thirds of the sentence . . ..
>
> . . ..

sought by the federal government pursuant to a statute aimed at providing reimbursement for the costs of criminal prosecution. This appeal deals with administrative measures taken by a state agency pursuant to state regulations aimed at maintaining prison order and rehabilitating prison inmates. The factual contexts differ so significantly that we deem it inappropriate to apply the *Halper* analysis. It is for the Wisconsin Supreme Court, if it so chooses, to modify its *Killebrew* analysis in light of *Halper.*

[1]Section 53.11, Stats. (1987–88) was renumbered sec. 302.11 by sec. 1629, 1989 Wis. Act 31.

(2)(a) Any inmate who violates any regulation of the prison or refuses or neglects to perform required or assigned duties is subject to extension of the mandatory release date as follows: 10 days for the first offense, 20 days for the 2nd offense and 40 days for the 3rd or each subsequent offense.

(b) In addition to the sanctions under par. (a), any inmate who is placed in adjustment, program or controlled segregation status shall have his or her mandatory release date extended by a number of days equal to 50% of the number of days spent in segregation status . . ..

The WCI disciplinary committee imposed upon Fonder eight days adjustment segregation, 360 days program segregation, and a ten-day extension of his mandatory release date.

Fonder claims that he was subjected to multiple punishment, contrary to the double jeopardy bars of the fifth amendment to the U.S. Constitution and art. I § 8 of the Wisconsin Constitution.[2] Fonder has no claim if the imposition of punishment under the prison disciplinary rules does not bar a subsequent criminal prosecution for the same conduct. It is said in 21 Am. Jur. 2d *Criminal Law* § 248 at 444 (1981): "[P]rison disciplinary measures or administrative sanctions imposed upon a prisoner for violation of a prison rule of conduct do not raise the bar of double jeopardy to his prosecution for a statutory offense arising from the same act that was the basis of the prison discipline." (Footnote omitted.) The impressive list of authorities cited by the majority, majority op. at 596 n.3, establishes a *per se* rule.

---

[2] I am concerned only with Fonder's claim that the double jeopardy clauses barred punishing him for violating Wis. Adm. Code § HSS [DOC] 303.12 (battery) and prosecuting him criminally for the same.

The drafters of the inmate disciplinary code, Wis. Adm. Code ch. HSS [DOC] 303 considered that imposing discipline under the code did not bar criminal proceedings for the same conduct. The introductory note to the disciplinary code states in part:

> The experience in Wisconsin has been that disciplinary proceedings are a more effective way of dealing with most crimes committed in prison than prosecution is. In extreme cases, of course, cases are referred for prosecution. However, in these cases as well as in less serious cases, prison officials need to have the authority to isolate or punish individuals in order to prevent a recurrence of violence. The U.S. supreme court has approved the practice of bringing both disciplinary and criminal proceedings against an individual based on a single incident, implying that no double jeopardy problems are raised by this practice. *Baxter v. Palmigiano,* 425 U.S. 308 (1976).

The *Baxter* court did not, however, approve the practice of subjecting an inmate to both disciplinary action and a criminal prosecution for the same conduct. The issue in *Baxter* was whether certain procedures used in disciplinary proceedings at San Quentin violated the inmate's constitutional rights. One of the questions was whether the inmate's fifth-amendment silence at his disciplinary hearing could be used against him. The Court held that it could. An argument which the inmate made was that, if he testified, his statements could be used against him in a subsequent criminal proceeding. It is true that the Court did not reject the inmate's argument on the grounds that he could not be prosecuted in a subsequent criminal proceeding; however, the issue of whether jeopardy attached by reason of the disciplinary proceedings was not raised and was not decided by the Court. So far as I have been able to determine, the

601

United States Supreme Court has never directly faced the issue.

The United States Supreme Court has, however, rejected the proposition that the double jeopardy clause does not apply to a proceeding which is civil in nature. *See United States v. Halper,* 490 U.S. 435, 447–48 (1989). Therefore, those cases applying a *per se* rule to prison disciplinary proceedings, simply because they are civil proceedings, are not entitled to persuasive weight.

In *Halper,* the Court held that a civil penalty may constitute punishment under the double jeopardy clause. Halper was criminally prosecuted for filing sixty-five false claims under the federal Medicare program. The total overcharges were $585. Halper was sentenced to imprisonment for two years and fined $5,000. The government then brought an action against him under the civil False Claims Act and insisted that it was entitled to a statutory penalty of more than $130,000. Ultimately, the Supreme Court held that Halper was protected by the double jeopardy clause from a sanction so disproportionate to the government's damages that it constituted a second punishment.

In *Killebrew,* the Wisconsin Supreme Court did not make the mistake which has been made by so many other courts; it did not blindly follow ancient precedent based on the civil nature of prison disciplinary proceedings.[3] Rather, it looked at the disciplinary action taken

---

[3]Virtually all of the cases cited by the majority in footnote 3 trace back to *Pagliaro v. Cox,* 143 F.2d 900 (8th Cir. 1944). *See Killebrew,* 115 Wis. 2d at 247, 340 N.W.2d at 473. In *Pagliaro,* the court said that, "The allowance of good time, until earned for the entire term is a privilege which is conditioned expressly by . . . statute . . . allowing it upon a record of conduct showing 'that he has faithfully observed all the rules and has not been subjected to punishment.' " *Pagliaro,* 143 F.2d at 901 (citations omitted).

against the inmates and concluded that the action was not punishment under the constitution and therefore the double jeopardy clause did not bar the criminal prosecution.

Killebrew was placed on 360 days program segregation and five days of his earned good time was forfeited. In the case consolidated with Killebrew's appeal, the adjustment committee imposed on another inmate eight days of adjustment segregation, 180 days of program segregation, and forfeited all of the inmate's accumulated good time.

*Killebrew* may signal that the Wisconsin Supreme Court will ultimately adopt a *per se* rule that *any* disciplinary action taken under the inmate disciplinary code is not punishment under the double jeopardy clause. However, *Killebrew* did not adopt such a rule; a case-by-case analysis is required.

In *Killebrew,* the punishment imposed on the inmates included loss of good-time credit. The Constitution does not guarantee good-time credit for satisfactory behavior while in prison. *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974). In *Wolff,* the Court stated that because the state had created the right to good time and recognized its deprivation as a sanction for major misconduct, the prisoner's interest "has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Id.* However, protection against the arbitrary abrogation of earned good-time credit under the due process clause does not necessarily elevate such deprivation to punishment for double jeopardy purposes.

The case for elevating extension of a prisoner's mandatory release date to punishment under the double jeopardy clause is stronger. Under sec. 53.11(1), Stats. (1987–88), each inmate is *entitled* to mandatory release on parole when he or she has served two-thirds of his or her sentence. That date is established when the inmate is admitted into the system. When *Killebrew* was decided, the accepted wisdom was that the grant or denial of good-time credits was a matter of grace rather than of right. 60 Am. Jur. 2d *Penal and Correctional Institutions* § 228 at 1295 (1987). Section 53.11 was amended by 1983 Wis. Act 66 and 1983 Wis. Act 528. The Legislative Reference Bureau drafting record for these acts contains the following note which states that the proposed amendments make two substantial changes to the current statute. One change was the abandonment of statutory good-time.

> [T]he term "good time" is abandoned for two reasons. First, to eliminate the present notion that "good time" is a benefit tied to work performance . . .. The use of different language is also intended to underscore the change from the current system which has created confusion concerning whether "good time" vests or not . . ..

The legislative intent is clear that mandatory release on parole is a right and is not a mere benefit conferred by the grace of the corrections and parole officials. *See* Analysis by the Legislative Reference Bureau to 1983 A.B. 1011.

The change in legislative philosophy from good-time conferred as a matter of grace to mandatory release or parole is enough to ask the supreme court to take another look at *Killebrew* and *Quiroz.* The effect of extending a prisoner's mandatory release date is to

increase his or her sentence. One of the components of the multiple-punishment doctrine prevents increasing the defendant's punishment after he or she has begun to serve his or her sentence. Note, *A Definition of Punishment for Implementing the Double Jeopardy Clause's Multiple-Punishment Prohibition,* 90 Yale L.J. 632, 637 (1981).

There is, however, another factor under the revised legislation which suggests that the Wisconsin Supreme Court may wish to consider whether the extension of an inmate's mandatory release date for disciplinary reasons is punishment under the double jeopardy clause. *Halper,* 490 U.S. 435 (1989) holds that a severe civil penalty may constitute "punishment" for the purposes of double jeopardy analysis. While the fixed extension of an inmate's mandatory release date under sec. 53.11(2)(a), Stats. (1987–88), is relatively modest and is discretionary, the mandatory extension under sec. 53.11(2)(b) may be substantial, as it is in this case. Under *Halper* and, parenthetically, *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168 (1963), the civil penalty imposed under sec. 53.11(2)(b) may constitute "punishment" for the purpose of double jeopardy analysis.

The Yale Law Journal note states that state and lower federal courts have used an intent test to deny double jeopardy coverage to nontraditional sanctions within the criminal process. Note, *Definition of Punishment,* 90 Yale L.J. at 642. The Note suggests that "[a]n effects test that focuses on the burden a sanction places upon its recipient would avoid the problematic nature of the intent test and would fulfill the purposes of the double jeopardy clause." *Id.* In *Halper,* the Court rejected the intent test as "not well suited to the context of the 'humane interests' safeguarded by the Double Jeopardy Clause's proscription of multiple punish-

ments." 490 U.S. at 447. The Court said further: "This constitutional protection [against double jeopardy] is intrinsically personal. Its violation can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state." *Id.* (footnote omitted).

The Yale Law Journal note states that the Supreme Court has identified two distinguishing characteristics of criminal punishment: stigma and deprivation of liberty or property. Note, *A Definition of Punishment,* 90 Yale L.J. at 649. *See Breed v. Jones,* 421 U.S. 519, 529 (1975) (proceeding is essentially criminal if possible consequences include stigma and loss of liberty for several years). 90 Yale L.J. at 649. The Note suggests that under an effects test, probation should be deemed punishment for double jeopardy purposes. *Id.* at 650. A Boston University Law Review Note reaches the same conclusion with respect to federal parole release proceedings. *See* Note, *Violations of the Double Jeopardy Prohibition under the Federal Parole Release System,* 63 B.U.L. Rev. 673, 712 (1983). I suggest that the automatic extension of an inmate's mandatory release date has the characteristics of criminal punishment for purposes of double jeopardy analysis.

For these reasons, I would certify this appeal to the Wisconsin Supreme Court.