STATE of Wisconsin, Plaintiff-Respondent,

v.

Jamerrel EVERETT, Defendant-Appellant.†

Court of Appeals

*No. 98–3444–CR. Submitted on briefs October 7, 1999.—Decided November 24, 1999.*

(Also reported in 605 N.W.2d 633.)

†Petition to review denied.

617

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Timothy T. Kay* of *Kay & Kay Law Firm* of Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Gregory M. Posner-Weber*, assistant attorney general.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. NETTESHEIM, J. Jamerrel Everett appeals from a judgment of conviction for second-degree sexual assault of a child under sixteen years of age pursuant to § 948.02(2), STATS. The charge followed Everett's waiver from juvenile court in Racine county. The conviction followed a jury's guilty verdict in Waukesha county.

¶ 2. Everett raises three issues on appeal. First, he contends that the delinquency petition was subject to mandatory dismissal with prejudice pursuant to § 48.25(2)(a), STATS.,[1] and *C.A.K. v. State*, 154 Wis. 2d 612, 453 N.W.2d 897 (1990). Everett rests this argu-

---

[1] The juvenile court proceedings in this case were commenced before the effective date of the Juvenile Justice Code, ch. 938, STATS., 1997–98. Therefore, all statutory references in this opinion are to the 1993–94 edition of the Wisconsin Statutes.

ment on the fact that the Racine county district attorney filed the delinquency petition more than twenty days following the initial referral of the case by a Waukesha county intake worker to the Waukesha county district attorney. The delay occurred because the Waukesha county district attorney referred the matter to Racine county, Everett's county of residence.

¶ 3. We reject Everett's argument. Pursuant to *J.L.W. v. Waukesha County*, 143 Wis. 2d 126, 420 N.W.2d 398 (Ct. App. 1988), we hold that each district attorney had twenty days within which to take action under the statute. Since both district attorneys acted within twenty days following the respective referrals by the intake workers of each county, we hold that the delinquency petition was timely filed.

¶ 4. Second, Everett contends that the State's prosecution constituted double jeopardy because he had previously been disciplined for the same conduct by the juvenile institution where he was residing at the time of the offense. We hold that the prior discipline was not punishment within the meaning of double jeopardy law.

¶ 5. Third, Everett contends that the trial court erred by excluding his proffered testimony that another person told the victim to fabricate the sexual assault allegation against him. The State concedes that the trial court erred in excluding the evidence. We accept that concession. However, we agree with the State that the error was harmless.

¶ 6. We affirm the judgment of conviction.

## FACTS AND PROCEDURAL HISTORY

¶ 7. The criminal complaint alleged that Everett sexually assaulted a fellow resident on November 10, 1995, at the Ethan Allen School for Boys (Ethan Allen)

in Waukesha county. The matter was investigated by the Waukesha County Sheriff's Department, which, in turn, referred the matter to the Waukesha County Department of Health and Social Services (WDHSS) on November 27, 1995. The following day, November 28, the WDHSS intake worker referred the matter to the Waukesha county district attorney who reviewed the matter. On December 14, 1995, the Waukesha county district attorney referred the matter to the Racine county Department of Health and Social Services (RDHSS) because Everett was a resident of Racine county. This referral occurred within twenty days of the initial referral by the WDHSS intake worker.

¶ 8.  On January 8, 1996, the RDHSS intake worker referred the matter to the Racine county district attorney with a recommendation to file a delinquency petition. On January 19, 1996, the Racine county district attorney filed delinquency and waiver petitions against Everett. This filing occurred within twenty days of the referral by the RDHSS intake worker.

¶ 9.  On February 15, 1996, following a hearing, the Racine county juvenile court waived juvenile jurisdiction over Everett. Since the crime alleged against Everett occurred in Waukesha county, the State filed the criminal complaint with the Waukesha county circuit court on July 9, 1996.

¶ 10.  Everett responded with a motion to dismiss, raising two claims. First, he argued that the trial court did not have competency to proceed because the delinquency petition had been filed beyond the twenty-day statutory deadline measured from the initial referral of the matter by the WDHSS intake worker to the Waukesha county district attorney. Second, Everett claimed that the criminal prosecution violated his pro-

621

tection against double jeopardy because Ethan Allen had already disciplined him for the same conduct. The trial court rejected both arguments and denied the motion to dismiss.

¶ 11.  At the ensuing jury trial, Everett sought to testify about certain statements that Jerry K., also a resident at Ethan Allen, had made to him about the alleged sexual assault. The trial court sustained a hearsay objection from the State. Everett contended that his testimony was admissible pursuant to § 908.03(3), STATS., as evidence of Jerry K.'s then-existing state of mind. Everett then made the following offer of proof in support of his proffered testimony. Jerry K. was mad at Everett because Everett had failed to wake Jerry K. during a power outage. Everett explained to Jerry K. why he had not awakened him, but Jerry K. was not satisfied and threatened to get the victim in this case to make false accusations against Everett. Following the offer of proof, the trial court confirmed its prior ruling rejecting the testimony.

¶ 12.  The jury found Everett guilty and a judgment of conviction was entered. This appeal followed.

## DISCUSSION

### 1.  Timeliness of the Delinquency Petition

¶ 13.  Everett contends that the delinquency petition was filed beyond the deadline set out in § 48.25(2)(a), STATS. The statute provides:

> [T]he district attorney . . . shall file the petition, close the case, or refer the case back to intake within 20 days after the date that the intake worker's recommendation was filed. A referral back to intake may be made only when the district attorney . . . decides not to file a petition or determines that further

investigation is necessary. If the case is referred back to intake upon a decision not to file a petition, the intake worker shall close the case or enter into an informal disposition within 20 days. If the case is referred back to intake for further investigation, the appropriate agency or person shall complete the investigation within 20 days. If another referral is made to the district attorney . . . it shall be considered a new referral to which the time limits of this subsection shall apply. The time limits in this subsection may only be extended by a judge upon a showing of good cause under s. 48.315. If a petition is not filed within the time limitations set forth in this subsection and the court has not granted an extension, the petition shall be accompanied by a statement of reasons for the delay. *The court shall dismiss with prejudice a petition which was not timely filed* unless the court finds at the plea hearing that good cause has been shown for failure to meet the time limitations. [Emphasis added.]

¶ 14.   In a nutshell, this statute requires the district attorney to take certain action within twenty days after the date of the intake worker's recommendation. The district attorney must file a petition, close the case or refer the case back to intake. If the statutory deadline is not met, and if the time limits have not been extended upon a showing of good cause, the petition must be dismissed with prejudice.

¶ 15.   Everett rests his argument squarely on the statute and *C.A.K.* There, the district attorney received the intake worker's referral of C.A.K.'s case on July 31, 1987. Upon review of the referral, the district attorney asked the police department to provide further information. While waiting for the additional information, the twenty-day deadline passed. On September 3, 1987, the State filed delinquency and waiver peti-

tions.[2] *See C.A.K.*, 154 Wis. 2d at 615–16, 453 N.W.2d at 898.

¶ 16.  C.A.K. brought a motion to dismiss, contending that the petitions had not been timely filed within the twenty-day deadline as required by § 48.25(2)(a), STATS. C.A.K. also noted that the district attorney had not sought a prior extension of the deadline for good cause and that a statement of the reasons for the tardy filing did not accompany the petitions. The juvenile court denied the motion to dismiss. The court of appeals reversed, concluding that procedures set out in the statute were mandatory. The court directed that the petition be dismissed with prejudice. *See C.A.K.*, 154 Wis. 2d at 617, 453 N.W.2d at 899.

¶ 17.  Upon further review, the supreme court affirmed the court of appeals decision. *See id.* at 614, 453 N.W.2d at 898. After reviewing the language of the statute and the legislative history, the court said:

> We conclude that the mandatory language of sec. 48.25(2)(a), when viewed in light of the purpose and history of that section, leaves little doubt that, in creating sec. 48.25(2)(a), the legislature intended to define and limit the authority of the district attorney to initiate proceedings against a juvenile beyond the twenty-day time limitation set forth in that statute.

*C.A.K.*, 154 Wis. 2d at 623, 453 N.W.2d at 901–02. In so ruling, the supreme court also rejected the State's further argument that an amendment of an untimely petition should be permitted. The court said:

---

[2] Later, on September 17, 1987, the State filed further delinquency and waiver petitions based on additional allegations.

We further conclude that, by specifically enumerating the procedures which the district attorney is to follow when unable to file a delinquency petition within the twenty-day time limitation, the legislature intended to exclude any procedure not expressly authorized in sec. 48.25(2)(a). The amendment of an untimely petition after the plea hearing to state the reasons for the delay in filing is not included as an acceptable procedure in the statute.

*C.A.K.*, 154 Wis. 2d at 623–24, 453 N.W.2d at 902.

¶ 18.   On its face, *C.A.K.* supports Everett's argument. The delinquency petition ultimately filed by the Racine county district attorney occurred well beyond twenty days as measured from the initial referral by the WDHSS to the Waukesha county district attorney.

¶ 19.   The State responds, relying on *J.L.W.* The statute at issue in that case was § 48.24(5), STATS., which provides:

The intake worker shall recommend that a petition be filed, enter into an informal disposition or close the case within 40 days or sooner of receipt of referral information. If the case is closed or an informal disposition is entered into, the district attorney, corporation counsel or other official under s. 48.09 shall receive written notice of such action. A notice of informal disposition of an alleged delinquency case shall include a summary of facts surrounding the allegation and a list of prior intake referrals and dispositions. . . . Notwithstanding the requirements of this section, the district attorney may initiate a delinquency petition under s. 48.25 within 20 days after notice that the case has been closed or that an informal disposition has been made. *The judge shall dismiss with prejudice any such petition which is not referred or filed within the*

*time limits specified within this subsection.*
[Emphasis added.]

¶ 20. Unlike § 48.25(2)(a), STATS., which addresses the district attorney's obligation to take certain action within a prescribed period of time, this statute addresses the intake worker's obligations *to* take certain action within a prescribed period of time. However, both statutes mandate dismissal with prejudice if the time limits are not observed.

¶ 21. In *J.L.W.*, a Walworth county intake worker received a referral regarding J.L.W. on September 23, 1996. Upon learning that J.L.W. resided in Waukesha county, the worker referred the matter to a Waukesha county intake worker on October 8. On November 14, beyond the forty-day deadline set out in § 48.24(5), STATS., the Waukesha county worker recommended that a petition be filed. After the petition was filed, J.L.W. moved for dismissal. *See J.L.W.*, 143 Wis. 2d at 128, 420 N.W.2d at 399. The juvenile court denied the motion.

¶ 22. The court of appeals affirmed this ruling. The court acknowledged that "standing alone, sec. 48.24(5), STATS., appears unambiguous and that forty days does mean forty days." *J.L.W.*, 143 Wis. 2d at 130, 420 N.W.2d at 400. However, the court also noted its obligation to read the juvenile code as a whole. *See id.* The court then observed that the intake worker's referral of the matter to Waukesha county was proper under the general written policies issued by the juvenile court pursuant to § 48.24(6). Those policies provided that the best interests of the child and the child's family were served by processing the case in the county of the child's residence. *See J.L.W.*, 143 Wis. 2d at 130–31, 420 N.W.2d at 400.

¶ 23. The court of appeals then turned to the ultimate question—whether the mandatory language in § 48.24(5), STATS., nonetheless required dismissal despite the fact that the best interests of the child were served by processing the case in the county of the child's residence. The court concluded that "the best interest of the child is paramount." *J.L.W.*, 143 Wis. 2d at 131, 420 N.W.2d at 400. The court said:

> We are persuaded that it is not in the best interests of the child for the successor intake worker to be imprisoned by a shortened time period following referral. . . .
>
> We do not deem it unreasonable for an intake worker to want to undertake a screening investigation *de novo*, perhaps even consisting of interviewing the same witnesses that the initial intake worker interviewed. Indeed, it is the successor intake worker's own recommendation to make, and he or she should not be dependent upon what the initial intake worker may or may not have done.
>
> . . . We are satisfied that the legislature meant to give each intake worker forty days from start to finish to allow a full and complete inquiry. We are further satisfied that it is in the best interests of the child to allow this full and complete investigation. It is not in the child's best interest to hamper the inquiry by shortening the time limit, perhaps causing a hurried and ill-considered result.

*Id*. at 131–32, 420 N.W.2d at 400.

¶ 24. As in *J.L.W.*, if we viewed the mandatory dismissal language of § 48.25(2)(a), STATS., in isolation, we would conclude that "twenty days means twenty days." But here we are confronted with the same multijurisdictional considerations that were present in *J.L.W.* True, we deal with the role of the district attor-

ney rather than the intake worker. But that does not alter the principle which underpins *J.L.W.*—that the best interests of the child and the child's family are most appropriately served by processing the case in the county of the juvenile's residence. *See J.L.W.*, 143 Wis. 2d at 130–32, 420 N.W.2d at 400. In *J.L.W.*, that principle was recited in the written policies governing intake workers. In this case, that principle was recited in § 48.185, STATS., the venue statute that was in effect at the time of Everett's alleged delinquent conduct.

¶ 25. If each intake worker in a multijurisdictional case has forty days to exercise the options recognized by § 48.24(5), STATS., it stands to reason that each district attorney in such a case should also have twenty days to exercise the options recognized by § 48.25(2)(a), STATS. A district attorney's role in the processing of a juvenile case is no less important than the intake worker's role. To hurry the process in order to comply with a strict reading of the statute would risk a hasty and uninformed prosecutorial decision. As *J.L.W.* teaches, that would be neither wise nor in keeping with the goals of the juvenile code. *See J.L.W.*, 143 Wis. 2d at 132, 420 N.W.2d at 400.

¶ 26. Our holding does no violence to *C.A.K.* where the supreme court was not confronted with the difficulties posed by a multijurisdictional case. Moreover, there is nothing in the language of *C.A.K.* or § 48.25(2)(a), STATS., that precludes a district attorney from closing out a case by referring a matter to the district attorney of the county of proper venue under § 48.185(1), STATS.[3]

---

[3] We make the same caveat regarding the district attorney's obligations under § 48.25(2)(a), STATS., as we did regarding the intake worker's obligations in *J.L.W. v. Waukesha County*, 143

¶ 27.   We uphold the trial court's denial of Everett's motion to dismiss.

### 2.   Double Jeopardy

■

¶ 28.   Everett next argues that this criminal prosecution violated his constitutional protection against double jeopardy. This issue raises a question of law which we decide de novo. *See State v. Fonder*, 162 Wis. 2d 591, 593, 469 N.W.2d 922, 923 (Ct. App. 1991).

■

¶ 29.   In *Fonder*, the court of appeals held that prison disciplinary proceedings did not bar subsequent criminal prosecutions for the same acts. *See id.* at 598–99, 469 N.W.2d at 926. The court noted that although prison discipline may carry punitive aspects, the principal purposes of such discipline are "maintenance of institutional order and safety and assistance of individual rehabilitation." *Id.* at 596, 469 N.W.2d at 925. If that is so for adult prison discipline, it surely must also be so for juvenile proceedings which are "the antithesis of criminal prosecution." *Winburn v. State*, 32 Wis. 2d 152, 158, 145 N.W.2d 178, 180 (1966).

¶ 30.   We hold that this criminal prosecution did not violate Everett's protections against double jeopardy.

### 3.   Evidentiary Ruling

¶ 31.   During the trial, Everett sought to introduce his own testimony that Jerry K., a fellow resident at Ethan Allen, harbored a grudge against him and had

Wis. 2d 126, 420 N.W.2d 398 (Ct. App. 1988). The district attorney must act in good faith when addressing the statutory deadlines. *See id.* at 132, 420 N.W.2d at 400–01.

threatened to persuade the victim in this case to falsely accuse Everett of the sexual assault. The State objected to this proffered testimony on hearsay grounds, and the trial court sustained the objection.

¶ 32.  The State concedes that the trial court's ruling was error and that Everett's testimony about Jerry K.'s statement was admissible under § 908.03(3), STATS. Under this exception, "a statement of a present intent to do an act in the future is admissible to prove that the declarant acted in conformity." 7 DANIEL D. BLINKA, WISCONSIN PRACTICE: EVIDENCE § 803.302, at 469 (1991); *State v. Johnson*, 60 Wis. 2d 334, 341, 210 N.W.2d 735, 738–39 (1973). Everett reasons, and the State agrees, that Jerry K.'s statement to him established not only the fact of Jerry K.'s present intent at the time of the statement but also that Jerry K. acted in conformity with the statement.

¶ 33.  Accepting the State's concession of error, we nonetheless agree with the State's further argument that the error was harmless because the jury learned of essentially the same thing through other testimony. The victim admitted on cross-examination that Jerry K. had encouraged him to report the incident. In addition, Everett testified that Jerry K. was mad at him because Everett had not awoken him during a power outage, that Jerry K. was not satisfied with Everett's explanation, and that Jerry K. had threatened him. The jury also learned from Everett that he had seen Jerry K. and the victim speaking in a secretive manner after the assault and that shortly thereafter the Ethan Allen authorities questioned Everett about the matter. In his final argument, Everett's counsel argued that this evidence demonstrated that Jerry K. had urged the victim to accuse Everett of the assault.

¶ 34.   Under *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–32 (1985), an error is harmless if there is no reasonable possibility that the error contributed to the conviction. A reasonable possibility is one sufficient to undermine confidence in the outcome of the proceedings. *See State v. Patricia A.M.*, 176 Wis. 2d 542, 556, 500 N.W.2d 289, 295 (1993). The burden to establish harmless error is on the beneficiary of the error, here the State. *See Dyess*, 124 Wis. 2d at 544 n.11, 370 N.W.2d at 232. Here, the only evidence that the jury was not allowed to hear were the specific words that Jerry K. had communicated to Everett about the threat to get the victim to report the assault. But the other evidence about this issue, which the jury did hear, functionally conveyed the same theory of defense to the jury. And, Everett's counsel argued from this evidence in his final argument to the jury.

¶ 35.   It is also important to note that Jerry K.'s statement to Everett did not eliminate the possibility of the sexual assault. In his offer of proof, Everett testified that "[Jerry K.] was going to ask [the victim] *if that really happened*. . . . Even if you didn't touch on [the victim] I will get [the victim] to say you touched on him." (Emphasis added.) Thus, Jerry K.'s own statement allowed that the assault may very well have occurred and that he was urging the victim to report a true event. Given the equivocal nature of the "threat" and the evidence which the jury otherwise heard concerning Jerry K.'s role in this matter, we harbor no lack of confidence in the outcome of this case.

631

## CONCLUSION

¶ 36.   We hold that the juvenile court delinquency and waiver petitions were not subject to mandatory dismissal under § 48.25(2)(a), STATS. We further hold that this prosecution did not violate Everett's protection against double jeopardy. Finally, we hold that the exclusion of Everett's testimony regarding Jerry K. was harmless error.

*By the Court.*—Judgment affirmed.